JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Prime Healthcare Services- Roxborough, LLC d/b/a Roxborough Memorial Hospital: Mary Ellen Reilly, Esq. and Thomas R. Chawluk, Esq., Post & Schell, P.C., 4 Penn Center, 14th Floor, 1600 JFK Blvd., Phila, PA 19103
Simpson House, Inc. and Simpson House Foundation: Jeffrey W. McDonnell, Esq., Law Office of Peter A. Callahan, 1600 Market Street, Suite 2020, Phila., PA 19103
Kindred Hospital South Philadelphia and Kindred Healthcare, Inc.: John Skrocki, Esq., Burns White LLC, 100 Four Falls, Suite 515, 1001 Conshohocken State Road, West Conshohocken, PA 19428

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: _____

Brief description of cause: _____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD
*Mary Ellen Reilly*

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: c/o Rhonda Hill Wilson, Esquire, 1500 JFK Boulevard, Suite 820, Phila, PA 19102

Address of Defendant: c/o Mary Ellen Reilly, Esquire, 1600 JFK Boulevard, 14th Floor, Phila, PA 19103

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☒

Does this case involve multidistrict litigation possibilities?     Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: 2:15-cv-06636-GJP     Judge: Gerald Pappert     Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☒   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Alleged violations of Federal Code regulations and unspecified laws of the United States

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify) Medical Malpractice
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Mary Ellen Reilly, Esquire , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 9/9/2016     *Mary Ellen Reilly*     38400

Attorney-at-Law     Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/9/2016     *Mary Ellen Reilly*     38400

Attorney-at-Law     Attorney I.D.#

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| John Simmons, Administrator of the Estate of Ola Simmons, Deceased | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Simpson House, Inc.; Simpson House Foundation; Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital; Kindred Hospital South Philadelphia and Kindred Healthcare, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x )

| 9/9/2016 | Mary Ellen Reilly, Esquire | Prime Healthcare Services- Roxborough LLC d/b/a Roxborough Memorial Hospital |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-587-1000 | 215-320-4763 | mreilly@postschell.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

BY:  MARY ELLEN REILLY
E-MAIL: mreilly@postschell.com
I.D. # 38400
BY: THOMAS R. CHAWLUK
E-MAIL: tchawluk@postschell.com
I.D. # 307852
FOUR PENN CENTER
1600 JOHN F KENNEDY BLVD.
PHILADELPHIA, PA  19103
215-587-1000

Attorneys for Defendant,
Prime Healthcare Services-Roxborough,
LLC d/b/a Roxborough Memorial Hospital

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Simmons, Administrator of the  Estate of Ola Simmons, Deceased<br><br><div align="center">Plaintiff,</div><br>vs.<br><br>Simpson House, Inc.; Simpson House Foundation; Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital; Kindred Hospital South Philadelphia and Kindred Healthcare, Inc.<br><br><div align="center">Defendants</div> | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

**PETITION OF DEFENDANT, PRIME HEALTHCARE SERVICES-ROXBOROUGH, LLC D/B/A ROXBOROUGH MEMORIAL HOSPITAL, FOR REMOVAL**

Defendant, Prime Healthcare Services- Roxborough, LLC d/b/a Roxborough Memorial Hospital, by and through its attorneys, Post & Schell, P.C., respectfully petitions for the removal of the above-captioned action, which is presently pending in the Philadelphia County Court of Common Pleas, Civil Action No. 160500836, to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §1331, 28 U.S.C. §1332 and 28 U.S.C. §1441 *et seq.*  In support thereof, Defendant avers as follows:

**The Parties and Background**

1.      On or about May 6, 2016, Plaintiff instituted this action by the filing of a Praecipe for Writ of Summons in the Court of Common Pleas for Philadelphia County, Pennsylvania.  A Complaint was filed on August 11, 2016.  See a true and correct copy of Plaintiff's Complaint, attached hereto as Exhibit "A".

2.      Previously, in December 2015, Plaintiff filed an initial, nearly identical action in the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:15-cv-06636-GJP, which is currently proceeding before The Honorable Gerald J. Pappert.

3.      Within the Complaint, Plaintiff asserts numerous claims against Defendants including claims related to violations of Federal Medicare and Medicaid regulations, OBRA regulations and unspecified violations of statutory and regulatory duties of the United States of America.  See Exhibit "A" at paragraph 151.

4.      Plaintiff has acknowledged that jurisdiction is proper in the Eastern District of Pennsylvania, as Plaintiff initiated an identical cause of action based on the alleged facts of the case in the Eastern District of Pennsylvania in December 2015, which is currently active and proceeding.

5.      Moreover, Plaintiff is a citizen of New Jersey.  See Exhibit A at paragraph 1.

6.      Defendant Prime Healthcare Services- Roxborough, LLC d/b/a Roxborough Memorial Hospital is a Pennsylvania corporation, with a principal place of business in Philadelphia, PA.  See Exhibit "A" at paragraph 6.

7.      As alleged in Plaintiff's Complaint, co-defendants Simpson House, Inc. and Simpson House Foundation are Pennsylvania corporations with a principal place of business in Philadelphia, PA.  See Exhibit "A" at paragraph 10.

2

8.    As alleged in Plaintiff's Complaint, co-defendant Kindred Hospital- South Philadelphia is a hospital facility, licensed by the Commonwealth of Pennsylvania, with a principal place of in Philadelphia, PA.  See Exhibit "A" at paragraph 8.

9.    As alleged in Plaintiff's Complaint, co-defendant Kindred Healthcare, Inc. is a healthcare corporation with a principal place of in Louisville, KY.  See Exhibit "A" at paragraph 9.

10.    Defendants now timely remove this matter to the Unites States District Court for the Eastern District of Pennsylvania.

**Basis for Removal to Federal Court**

11.    A defendant may remove a civil action that was filed in a State Court to the Federal Court for the District in which the State Court action is pending, provided the Federal Court would have original jurisdiction to address the matter.  See 28 U.S.C. §§1441; 1446(a).

12.    Pursuant to 28 U.S.C. §1331, the District Courts have original jurisdiction of this matter, because according to Plaintiff's Complaint, Plaintiff has asserted claims against Defendants pursuant to alleged violations of Federal regulations, and alleged violations of unspecified laws of the United States.

13.    Moreover, pursuant to 28 U.S.C. § 1332, a matter may be removed to Federal Court based upon the diversity of citizenship of the parties.

14.    Complete diversity of citizenship between the parties exists when "every plaintiff [is] of diverse state citizenship from every defendant."  *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006).

15.    A corporation is considered to be a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c).

16.     This Court has original jurisdiction over the instant matter based upon diversity of citizenship under 28 U.S.C. §1332 because the parties are of diverse citizenship at all times hereto and Plaintiff's claimed damages are in excess of jurisdictional limits.

17.     The United States District Court for the Eastern District of Pennsylvania is the District Court having jurisdiction over this matter because this companion action was filed in the Court of Common Pleas of Philadelphia County.

18.     As noted above, plaintiff's initial action was filed in the Eastern District of Pennsylvania in December 2015, and is currently pending.

19.     Counsel for co-defendants Simpson House, Inc. and Simpson House Foundation, as well as counsel for co-defendants Kindred Hospital- South Philadelphia and Kindred Healthcare, Inc., have advised that they intend to join in this petition for removal of this action to the Eastern District of Pennsylvania.

20.     Plaintiff has acknowledged that jurisdiction of this matter is proper in the Eastern District of Pennsylvania, that diversity of citizenship exists, and that the damages claimed meet the jurisdictional limits, in the nearly identical Complaint filed in Plaintiff's initial action currently pending in the Eastern District of Pennsylvania at Docket No. 2:15-cv-06636-GJP.

21.     Defendants have timely filed for removal of the instant matter to this Court because they have filed this Notice of Removal within thirty (30) days of service of the Complaint on Defendants. 28 U.S.C. §1446.

22.     As required under 28 U.S.C. §1446(d), Defendants will promptly file copies of this Notice of Removal and related papers with the Prothonotary for the Court of Common Pleas of Philadelphia County and copies will be sent to all parties.

WHEREFORE, Defendant, Prime Healthcare Services- Roxborough, LLC d/b/a Roxborough Memorial Hospital, respectfully requests that the above-captioned action currently pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, be removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

**POST & SCHELL, P.C.**
By:

Dated: September 9, 2016

Mary Ellen Reilly, Esquire
Thomas R. Chawluk, Esquire
Attorneys for Defendant,
Prime Healthcare Services-
Roxborough, LLC d/b/a Roxborough
Memorial Hospital

5

## CERTIFICATE OF SERVICE

I, Mary Ellen Reilly, Esquire, attorney for Defendant, Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital, hereby state that a true and correct copy of the foregoing Notice of Removal on behalf of Defendant, Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital, sent by first-class mail, postage prepaid on the date set forth below, was served upon the following individual(s):

Rhonda Hill Wilson, Esquire
Law Offices of Rhonda Hill Wilson, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 820
Philadelphia, PA 19102
*Attorney for Plaintiff*

Jeffrey W. McDonnell, Esquire
Law Office of Peter A. Callahan
1600 Market Street, Suite 2020
Philadelphia, PA 19103
*Attorney for Defendants, Simpson House, Inc. and Simpson House Foundation*

John Skrocki, Esquire
Burns White LLC
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
*Attorney for Defendants, Kindred Hospital South Philadelphia and Kindred Healthcare, Inc.*

POST & SCHELL, P.C.

By: _____

Dated: September 9, 2016

Mary Ellen Reilly, Esquire
Thomas R. Chawluk, Esquire
Attorneys for Defendant,
Prime Healthcare Services-
Roxborough, LLC d/b/a Roxborough
Memorial Hospital

6

# EXHIBIT "A"

*LAW OFFICE OF RHONDA HILL WILSON, P.C.*
*BY:  Rhonda Hill Wilson, Esquire*
*Attorney I.D. #34813*
*Two Penn Center Plaza -  Suite 820*
*1500 John F. Kennedy Boulevard*
*Philadelphia, PA 19102*
*(215) 972-0400*

*Filed and Attested by the Office of Judicial Records 11 AUG 2016 04:19 pm C. FORTE*

*Attorney for Plaintiff,*
*John Simmons, Administrator*

| | |
|---|---|
| John Simmons, | : |
| Administrator for the Estate of | : |
| Ola Simmons, Deceased | : |
| and in his own right | : |
| 4925 Lexington Avenue | : |
| Pennsauken, NJ 08109 | : |
| Plaintiff | : |
| vs. | : |
| Simpson House, Inc. | : |
| 2101 Belmont Avenue | : |
| Philadelphia, PA 19131, | : |
| and | : |
| Simpson House Foundation | : |
| 2101 Belmont Avenue | : |
| Philadelphia, PA 19131, | : |
| and | : |
| Prime Healthcare Services-Roxborough, | : |
| LLC d/b/a Roxborough Memorial Hospital | : |
| 5800 Ridge Avenue | : |
| Philadelphia, PA 19128, | : |
| and | : |
| Kindred Hospital-South Philadelphia | : |
| 1930 South Broad Street | : |
| Philadelphia, PA 19145, | : |
| and | : |
| Kindred Healthcare, Inc. | : |
| 680 South Fourth Street | : |
| Louisville, KY 40202, | : |
| Defendants. | |

Philadelphia Court of Common Pleas

May Term, 2016
No. 00836

JURY TRIAL DEMANDED

## CIVIL ACTION - COMPLAINT
### *PROFESSIONAL LIABILITY*

NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  Your are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.

AVISO

"Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias, de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogadoro y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandes en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted

You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.
IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO
TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND
OUT WHERE YOU CAN GET LEGAL HELP.

**PHILADELPHIA BAR ASSOCIATION**
1101 Market Street, 11th Floor
Philadelphia, PA 19107-2911

cumpla con todas las provisiones de este demanda.  Usted puede perder
dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.
SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE
DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME PRO
TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA
ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR

**PHILADELPHIA BAR ASSOCIATION**
1101 Market Street, 11th Floor
Philadelphia, PA 19107-2911

Case ID: 160500836

*LAW OFFICE OF RHONDA HILL WILSON, P.C.*
*BY:  Rhonda Hill Wilson, Esquire*
*Attorney I.D. #34813*
*Two Penn Center Plaza - Suite 820*
*1500 John F. Kennedy Boulevard*
*Philadelphia, PA 19102*                    *Attorney for Plaintiff,*
*(215) 972-0400*                              *John Simmons, Administrator*

| | |
|---|---|
| John Simmons, | : |
| Administrator for the Estate of | : |
| Ola Simmons, Deceased | : |
| and in his own right | : |
| 4925 Lexington Avenue | : Philadelphia Court of Common Pleas |
| Pennsauken, NJ 08109 | : |
| Plaintiff | : May Term, 2016 |
| vs. | : No. 00836 |
| Simpson House, Inc. | : |
| 2101 Belmont Avenue | : JURY TRIAL DEMANDED |
| Philadelphia, PA 19131, | : |
| and | : |
| Simpson House Foundation | : |
| 2101 Belmont Avenue | : |
| Philadelphia, PA 19131, | : |
| and | : |
| Prime Healthcare Services-Roxborough, | : |
| LLC d/b/a Roxborough Memorial Hospital | : |
| 5800 Ridge Avenue | : |
| Philadelphia, PA 19128, | : |
| and | : |
| Kindred Hospital-South Philadelphia | : |
| 1930 South Broad Street | : |
| Philadelphia, PA 19145, | : |
| and | : |
| Kindred Healthcare, Inc. | : |
| 680 South Fourth Street | : |
| Louisville, KY 40202, | |

---

## **COMPLAINT IN CIVIL ACTION**

Plaintiff John Simmons, the Administrator for the Estate of Ola Simmons, Deceased and

in his own right, hereby submits the following Complaint and alleges as follows:

This is a nursing home negligence and corporate negligence action brought by Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, Deceased and in his own right.

### *PARTIES*

The Plaintiff, John Simmons, Administrator of the Estate of Ola Simmons, Deceased and in his own right, is a citizen of the State of New Jersey and presently resides at 4925 Lexington Avenue, Pennsauken, New Jersey 08109 and by way of Complaint against the Defendants Simpson House, Inc., Simpson House Foundation, Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital, Kindred Hospital South Philadelphia, and Kindred Healthcare, Inc. states as follows:

1.     John Simmons is the Administrator of the Estate of Ola Simmons, Deceased and is an adult individual who is a citizen of the State of New Jersey. He presently resides at 4925 Lexington Avenue, Pennsauken, New Jersey. The late Ola Simmons was, at all times relevant, prior to her death, a citizen of the State of New Jersey and she did permanently reside at 4925 Lexington Avenue, Pennsauken, New Jersey 08109.

2.     Plaintiff John Simmons was appointed as the Administrator of his mother's estate on August 14, 2014, by the Surrogate of Camden County, New Jersey.

3.     Plaintiff's decedent, Ola Simmons, was admitted to the Defendants' Nursing Home, Simpson House, located at 2101 Belmont Avenue, Philadelphia County, Philadelphia, Pennsylvania 19131 on or about November 11, 2013, for abnormality of gait and difficulty in walking, dementia and psychosis.

4.     On July 12, 2014, the late Mrs. Simmons died from injuries sustained from septicemia, septic shock, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin

2

Case ID: 160500836

infection, Escherichia Coli Bacteria infection, C diff infection, and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, at Arista Care Hospice facility in Plymouth Meeting, Pennsylvania, which conditions were caused by Defendants' failure to appropriately and adequately care for the Plaintiff's decedent while under their treatment and care.

5.       At all times relevant hereto, the Defendants Simpson House, Inc., and Simpson House Foundation (hereafter referred to as Simpson House Defendants) held themselves out as specialists in the field of adult skilled nursing care with the expertise necessary to maintain the health and safety of adult elder and persons unable to care adequately for themselves. Plaintiff is asserting a professional liability claim against the Defendants, Simpson House, Inc., and Simpson House Foundation.

6.       Defendant Prime Healthcare Services-Roxborough, LLC, d/b/a Roxborough Memorial Hospital is a healthcare and business corporation with its place of business, a hospital which it owned and operated, located at Roxborough Hospital, 5800 Ridge Avenue, Philadelphia, Pennsylvania 19128 and at all times relevant hereto was a corporate citizen of the Commonwealth of Pennsylvania.

7.       Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital owned, operated, managed and/or controlled Roxborough Hospital at all times relevant hereto. Plaintiff is asserting a professional liability claim against Defendant Prime Healthcare Services-LLC d/b/a Roxborough Memorial Hospital.

8.       Defendant Kindred Hospital South Philadelphia is a hospital facility, licensed by the Commonwealth of Pennsylvania, and located at 1930 South Broad Street, Philadelphia, PA

Case ID: 160500836

19145. Defendant Kindred Hospital-South Philadelphia is a part of Kindred Healthcare's nationwide network of transitional care hospitals and inpatient rehabilitation hospitals. They are a specialty hospital providing long-term acute care to medically complex patients who require continued care and extended recovery time. Plaintiff is asserting a professional liability claim against Defendant Kindred Hospital-South Philadelphia.

9.    Defendant Kindred Healthcare, Inc. is engaged in the business of health care and is engaged in the business of providing post acute and transition hospital care and services to the general public. It maintains its business in 680 South Fourth Street, Louisville, KY 40202. At all times, relevant hereto, it owned, managed and operated Kindred Hospital-South Philadelphia. Plaintiff is asserting a professional liability claim against this Defendant.

10.    Defendants Simpson House, Inc. and Simpson House Foundation are non-profit corporations organized and existing under the laws of the Commonwealth of Pennsylvania with its offices located at 2101 Belmont Avenue, Philadelphia, PA 19141.  The corporations owned, operated, managed and/or maintained Simpson House Nursing and Rehabilitation Home, a skilled nursing facility, which provided health care and skilled nursing services to patients/residents such as the late Ola Simmons, deceased who at all times relevant hereto was under their treatment and care.

11.    In the alternative, Simpson House Nursing Home and Kindred Hospital-South Philadelphia are rehabilitation facilities participating in the Medicare program and subject to 42 C.F.R.  Part 489 as it pertains to rehabilitation hospitals.

## *STATEMENT OF FACTS*

12.    The Plaintiff John Simmons, Administrator of the Estate of Ola Simmons and in

4

Case ID: 160500836

his own right incorporates paragraphs 1 through 11 of this Complaint as if fully set forth herein.

13.     The Defendants were under contractual, professional and legal duties to provide reasonable and adequate health care and/or skilled nursing care to Plaintiff's-decedent Ola Simmons consistent with existing community standards and pursuant to federal, state and local laws and regulations.

14.     The late Ola Simmons was admitted to Simpson House Nursing Home on November 11, 2013, and discharged on April 13, 2014; the late Ola Simmons was totally dependent upon its staff for her mental, physical, psycho-social and medical needs.

15.     The late Ola Simmons was admitted for rehabilitation to Simpson House with a diagnosis of episodic incontinence with a primary diagnosis of senile psychosis. She was prescribed physical therapy for muscle strength by Dr. Charles Breish which care was to be paid for by Medicare Part B.

16.     The nursing plans of care prepared by the nursing staff at Simpson House for the late Ola Simmons included on her incontinence of bowel and bladder.

17.      At the time of Mrs. Simmons's admission to Simpson House on November 12, 2013, there were no abnormalities of the skin noted by Dr. Faidi, who was employed by Simpson House Defendants at all relevant times hereto.

18.     At the time of the late Ola Simmons's admission to Simpson House, Defendants Simpson House, Inc., and Simpson House Foundation by their staff, agents, officers, servants and employees, including but not limited to administrators, physicians, registered nurses, licensed practical nurses, physical therapists, did not plan for or select any interventions or approaches for skin integrity or to prevent skin breakdown.

5

19.     During the time that the late Ola Simmons was a resident at Simpson House, weekly skin assessments were not performed and/or completed in a timely fashion and/or performed in a manner consistent with professional standards of care, federal and state nursing home laws and regulations.

20.     During the late Ola Simmons's stay at Simpson House, she developed pressure sores, however, the medical and nursing documentation does not accurately or completely state when the pressure sores developed, their color, condition, staging or dimensions in contravention of federal and state nursing home laws and regulations for the prevention of the development of pressure sores and clinical documentation.

21.     On or about February 5, 2014, while in Simpson House Ola Simmons was found sitting on the floor, next to the window in her room. She was found to be disoriented, and an assessment was performed by a licensed practical nurse who did not have authority under the Pennsylvania Nurse Practices Act to perform a full nursing assessment of the Plaintiff's decedent.

22.     On or about February 5, 2014, Defendants Simpson House, Inc. and Simpson House Foundation failed to protect Plaintiff's decedent, Ola Simmons from falling out of the bed as a result of failure to adequately assess and prevent Plaintiff's decedent from fall risk and failure to provide nursing supervision to prevent her fall from bed.

23.     On or about February 22, 2014, while Ola Simmons was at Simpson House, the nurse noted that Plaintiff's decedent had complaints of lower extremity pain. However, there was/is no physician or nursing assessment or description of the cause of the pain or treatment prescribed for her leg pain.

6

Case ID: 160500836

24.     On or about March 14, 2014, Plaintiff's decedent Ola Simmons was noted to have a concerning cough and was diagnosed with an upper respiratory infection. However, only cough medicine was ordered. No X-Ray or complete blood count was ordered as per professional standards of care and in contravention of federal and state nursing home laws and regulations to determine the cause of her cough.

25.     On April 9, 2014, the weight records show the late Ola Simmons had a 9.4% weight loss in a month while at Simpson House, which according to federal and state nursing home regulations is a " severe" weight loss, which was required to be assessed, monitored and treated in order to be determined as an unavoidable weight loss.

26.     On April 13, 2014, the Plaintiff's decedent Ola Simmons was admitted to Roxborough Hospital from Simpson House Nursing Home with a diagnosis of acute kidney injury related to dehydration, pneumonia due to sepsis, sepsis, septic shock, dehydration, respiratory failure, atrial fibrillation, clostridium difficile stool, PEG tube placement, non ST. elevation myocardial infarction, placement of tracheostomy, septicemia, and diabetes. She did not have these conditions or a need for care for these conditions on Admission to Simpson House.

27.     On April 13, 2014, on admission into the Roxborough Hospital Emergency Room, no pressure ulcers were noted and the diagnosis from Dr. Charles Breish was dehydration, acute kidney injury, septic shock, pneumonia with respiratory failure and myocardial infraction.

28.     On April 13, 2014, Plaintiff was admitted to the intensive care unit of Roxborough Hospital under the care of Dr. Polan.

29.     On admission, tracheosotomy was placed and a PEG tube was placed two days later

7

Case ID: 160500836

for nutrition and oxygen.

30.    Treatment was administered for symptoms posture of clostridium difficile and antibiotics for pneumonia. Treatment of amiodarone was given for the atrial fibrillation.

31.    During her stay in Roxborough Hospital, her treating physicians did not identify or assess any pressure sores on her skin other than on April 23, 2014, who noted a 5 cm ulcer on her right lower extremity below the knee.

32.    On April 14, 2014, Plaintiff's decedent had no pressure sores noted by Roxborough Hospital Nursing Staff.

33.    On April 15, 2015, Plaintiff's decedent had no pressure sores noted by Roxborough Hospital Nursing Staff.

34.    On April 16, 2014, Plaintiff's decedent had no pressure sores noted by Roxborough Hospital Nursing Staff.

35.    On April 17, 2014, Plaintiff's decedent's wound status was documented as unchanged by the Roxborough Hospital Nursing Staff.

36.    On April 18, 2014, Plaintiff's decedent's wound status was documented as unchanged by the Roxborough Hospital Nursing Staff.

37.    On April 19, 2014, a Stage I pressure sore was noted on Mrs. Simmons's sacrum and coccyx area with erythema or superficial reddening of the skin was noted.

38.    On April 20, 2014, the Roxborough Hospital nurse assessment was that in Mrs. Simmons' sacral area, there was a Stage One pressure sore with brown, red, soft and loose skin noted; there was no reference to wounds to her extremities.

39.    On April 21, 2014, during the day, redness was noted to her sacrum by the nursing

8

Case ID: 160500836

staff with no dimensions or additional descriptions and no evaluation or assessment of her sacral wound with dimensions of 2 cm x 2.5 cm.

40.     On April 21, 2014, during the night shift, the nursing staff noted a pressure sore and skin tear with edema or swelling to her right lateral extremity for the first time. The wound on her leg was 15 cm x 3 cm. There is no description of depth of wound or its other characteristics.

41.     On April 22, 2014, wounds were identified on a Body description, but no other assessments were performed and the dimensions were listed as 2 cm x 2.5 cm in the skin sheets.

42.     On April 23, 2014, wounds were noted and described as sacral wound 2 cm x 3 cm with no drainage or odor and a skin plan was initiated. Plaintiff's decedent expressed pain.

43.     At this time, a Stage II-III pressure sore on the right lateral lower extremity was noted to be covered by a large bondage with medication (Tegaderm).

44.     On April 24, 2014, the late Mrs. Simmons's wound is increasing, and the nurses note Stage II-III pressure sore on the right lateral lower extremity covered by a large bandage with medication (Tegaderm). Plaintiff's decedent expressed pain. There were no descriptions of the wound other than sacral and leg wound covered.

45.     On April 25, 2014, the late Ola Simmons, the Roxborough Hospital nurses mentioned the leg and sacral wound, but provided no description.

46.     On April 26, 2014, the late Ola Simmons expressed pain and was tearful to touch and repositioning, lateral right lower leg tegaderm covered her Stage II sacral wound. She was reported to have pressure ulcer to her left leg and podiatry was recommenced to see Mrs. Simmons by an unidentified nurse.

47.     Mrs. Simmons's right leg was weeping serosangruneous drainage under her leg

9

Case ID: 160500836

bandage and sacral bandage. There is an assessment in the chart but the assessment of wounds is illegible.

48.    On April 26, 2014, the late Mrs. Simmons's leg was noted to be 4 x 6 inches long and 2 inches wide with 1 cm diameter with ischia in center.

49.    On April 27, 2014, the late Mrs. Simmons's sacral wound was not assessed.

50.    On April 28, 2014, the description of the wounds are illegible.

51.    On April 28, 2014, there were no description and measurement of the leg wound and/or sacral wound in the hospital chart.

52.    On April 29, 2014, the sacrum is described as Stage II and the right lateral leg is described as "4 x 4 in cling" and being followed by wound care but there are no wound care notes in the chart.

53.    There is no information on the wounds available on April 30, 2014, other than "fresh blood".

54.    On May 1, 2014, the late Mrs. Simmons' skin was described at Roxborough Hospital as red, irritated, fragile, thin, skin tears to the sacrum, Stage II sacrum with fresh blood, all extremities with swelling, but no description of dimensions.

55.    On May 2, 2014, there was no change reported to Mrs. Simmons wounds but no description of the wounds were contained within the chart, other than a pressure ulcer with excoriation and right lateral leg skin tear.

56.    On May 3, 2014, there was no complete description of the wounds by physician or nursing staff.

57.    On May 4, 2014, there was no complete description of the wounds by physician or

Case ID: 160500836

nursing staff.

58.     On May 5, 2014, there was no complete description of the wounds by physician or nursing staff, other than Stage II pressure ulcer, mid back wide skin tear and right lower extremity with scabbed area.

59.     Plaintiff's-decedent Ola Simmons was discharged from Roxborough Hospital on May 5, 2015 to Kindred Hospital-South Philadelphia for sub acute care and rehabilitation but there is no mention of the leg wound in the discharge papers.

60.     On admission to Kindred Hospital-South Philadelphia, the staff did not treat, assess or evaluate the Plaintiff-decedent's leg wounds until May 8, 2014. Defendant Kindred Hospital-South Philadelphia diagnosed the sacral wounds as Stage II on May 5, 2014.

61.     On admission At Defendant Kindred Hospital-South Philadelphia, on May 8, 2014, the Plaintiff's-decedent Ola Simmons' wound was re measured and found to be as follows for her sacrococcygeal area as stated below:


**Location:** Sacrococcygeal
**Onset type**: Community acquired
**Patient position:** Right side
**length**: 4 cm (1.6 in)
**width:** 5 cm (2 in)
**Depth**: .2 cm (0.1 in)
**Stage**: Unstageable
**Partial/Full thickness**: Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges**: Distinct, outline clearly visible, attached, even with base
**Undermining**: Not present
**Tunneling**: Not present
**Necrotic tissue type**: Loosely adherent yellow slough
**Necrotic tissue amount**: 35%
**Exudate type**: Serosanguineous: thin, watery, pale red/pink
**Exudate Amount**: Small
**Skin color surrounding wound (peri wound/dressing)**: Black or hyperpigmented

Case ID: 160500836

**Peripheral tissue edema**: Crepitus &/or pitting edema extends > = 4 cm
**Peripheral tissue induration**: None or minimal firmness around wound
**Granulation tissue**: Bright, beefy red: < 75% and 25% of wound filled
**Epithelization:** < 25% of wound covered
**Wound bed**: Sloughing 35%, red/granulating 65%


62.   At Defendant Kindred Hospital-South Philadelphia, on May 8, 2014, the Plaintiff's-

decedent Ola Simmons' wound was re measured and found to be as follows for her right lateral

lower leg.


**Location**: Right lateral lower leg
**Onset type**: Community acquired
**Patient position:** Supine
**length**: 15 cm (5.9 in)
**width:** 5 cm (2 in)
**Depth**: Unable to determine,
**Stage**:  Unstageable
**Partial/Full thickness**:  Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges**: Distinct, outline clearly visible, attached, even with wound base
**Undermining**: Not present
**Tunneling**: Not present
**Necrotic tissue type**: Adherent, soft, black eschar
**Necrotic tissue amount**: 95%
**Exudate type**: Purulent, thin or thick, opaque, tan/yellow
**Exudate Amount**: Moderate
**Skin color surrounding wound (peri wound/dressing)**: Bright red and/or blanches to touch
**Peripheral tissue edema**: Crepitus &/or pitting edema extends > = 4 cm
**Peripheral tissue induration**: None or minimal firmness around wound
**Granulation tissue**: No granulation tissue present
**Epithelization:**< 25 of wound covered
**Wound bed**: Black 95%, sloughing 5%
**Comments:** Patient with generalized pitting edema +4, anasarca. Skin taut.

63.   At Defendant Kindred Hospital-South Philadelphia, on May 8, 2014, the Plaintiff's-

decedent Ola Simmons' wound was re measured and found to be as follows for her right great

toe.

Case ID: 160500836

**Location:** Right Great toe
**Onset type:** Community acquired
**Patient position:** Supine
**length:** 1 cm
 **width:** 2.5 cm
**Depth:** 0 cm
**Stage:**
**Partial/Full thickness:** Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges:** Distinct, outline clearly visible, attached, even with wound base
**Undermining:** Not present
**Tunneling:** Not present
**Necrotic tissue type:** None visible
**Necrotic tissue amount:** None visible
**Exudate type:** None or Bloody
**Exudate Amount:** None
**Skin color surrounding wound (peri wound/dressing):** Pink or Normal for ethnic group
**Peripheral tissue edema:** Crepitus &/or pitting edema extends > = 4 cm
**Peripheral tissue induration:** None or minimal firmness around wound
**Granulation tissue:** Skin intact or partial thickness wound
**Epithelization:** 100% wound covered, surface intact
**Wound bed:** Purple , mottling area, 100%
**Comments:** Area more toward arterial, in combination with anasarca +4, generalized pitting

64. On May 15, 2014, the wounds were assessed to be for sacrococcygeal area.

**Location:** Sacroccygeal
**Onset type:** Community acquired
**Patient position:** Left side
**length:** 3.5 cm (1.4 in)
**width:** 4.5 cm (1.8 in)
**Depth:** 0.2 cm (0.1 in)
**Stage:** Stage II
**Partial/Full thickness:** Full thickness loss involving damage or narcosis of subcutaneous tissue; may extend down to but no through underlying fascia; and/or mixed partial and full thickness and/or layers obscured by granulation tissue.
**Edges:** Distinct, outline clearly visible, attached, even with base
**Undermining:** Not present
**Tunneling:** Not present
**Necrotic tissue type:** None visible
**Necrotic tissue amount:** None visible
**Exudate type:** Serosanguineous: Thin, watery, pale, red/pink
**Exudate Amount:** Small

13

Case ID: 160500836

**Skin color surrounding wound (peri wound/dressing)**: Bright red and/or blanches to touch
**Peripheral tissue edema**: None to minimal swelling around the wound
**Peripheral tissue induration**: None or minimal firmness around wound
**Granulation tissue**: Pink, and/or dull, dusky red and/or fills < +25% of wound epithelization
**Epithelization:**< 25% of wound covered
**Wound bed**: Red/non-granulating 100%
**Comments:** Continue Plan of Care (POC), base marbled fibrin. Hydro colloid breaking down. callous edge.

65.    On May 15, 2014, the wounds were assessed to be for right lateral lower leg.

**Location:** Right lateral lower leg
**Onset type**: Community acquired
**Patient position:** Supine
**length:** 15 cm (5.9 in)
**width:** 4.4 cm (1.7 in)
**Depth:** Unable to determine
**Stage:** Unstageable
**Partial/Full thickness:** Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges:** Distinct, outline clearly visible, attached, even with wound base
**Undermining:** Not present
**Tunneling:** Not present
**Necrotic tissue type:** Adherent, soft, black eschar
**Necrotic tissue amount**: 95%
**Exudate type:** Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Small
**Skin color surrounding wound (peri wound/dressing)**: Bright red and/or blanches to touch
**Peripheral tissue edema**: None or minimal swelling around wound
**Peripheral tissue induration**: None or minimal firmness around wound
**Granulation tissue**: Pink, and/or dull, dusky red and/or fills < + 25% of wound epithelization
**Epithelization:**< 25 of wound covered
**Wound bed**: Pink 5%, other description: Moist eschar, gray, 95%
**Comments:** Continue Dakins, add gel to help soften and rehydrate eschar


66.    On May 15, 2014, the wounds were assessed to be for right great toe.

**Location:** Right Great toe
**Onset type**: Community acquired
**Patient position:** Supine
**length**: 0.5 cm
**width:** 1.5 cm
**Depth**: 0 cm

14

Case ID: 160500836

**Stage**:
**Partial/Full thickness**: Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges**: Distinct, outline clearly visible, attached, even with wound base
**Undermining**: Not present
**Tunneling**: Not present
**Necrotic tissue type**: None visible
**Necrotic tissue amount**: None visible
**Exudate type**: None or Bloody
**Exudate Amount**: None
**Skin color surrounding wound (peri wound/dressing)**: Pink or Normal for ethnic group
**Peripheral tissue edema**: None or minimal swelling around wound
**Peripheral tissue induration**: None or minimal firmness around wound
**Granulation tissue**: Skin intact or partial thickness wound
**Epithelization**: 100% wound covered, surface intact
**Wound bed**: DTI 100%
**Comments**: Stable

67.    On May 21, 2014, the wounds were assessed to be for sacrococcygeal area.

**Location**: Sacrococcygeal
**Onset type**: Community acquired
**Patient position**: Left side
**length**: 2.5 cm (1 in)
**width**: 4 cm (1.6 in)
**Depth**: 0.1 cm (0 in)
**Stage**: Stage III
**Partial/Full thickness**: Full thickness loss involving damage or necrosis of subcutaneous tissue; may extend down to but no through underlying fascia; and /or mixed partial and full thickness and/or layers obscured by granulation tissue
**Edges**: Distinct, outline clearly visible, attached, even with base
**Undermining**: Not present (Active wound)
**Tunneling**: Not present (Active wound)
**Necrotic tissue type**: White/grey non-viable tissue and/or non-adherent yellow slough
**Necrotic tissue amount**: 50%
**Exudate type**: Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Small
**Skin color surrounding wound (peri wound/dressing)**: Bright red and/or blanches to touch
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue**: Pink, and/or dull, dusky red and/or fills < + 25% of wound epithelization
**Epithelization**:< 25% of wound covered
**Wound bed**: 50% fibrin/50% pink-marbled

Case ID: 160500836

68. On May 21, 2014, the wounds were assessed to be for right lateral lower leg.

**Location:** Right lateral lower leg
**Onset type:** Community acquired
**Patient position:** Supine
**length:** 16 cm (6.3 in)
**width:** 5 cm (2 in)
**Depth:** Unable to determine
**Stage:** Unstageable nonviable tissue
**Partial/Full thickness:** Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges:** Distinct, outline clearly visible, attached, even with wound base
**Undermining:** Not present (Active wound)
**Tunneling:** Not present (Active wound)
**Necrotic tissue type:** Adherent, soft, black eschar
**Necrotic tissue amount:** 100%
**Exudate type:** Purulent, thin or thick, opaque, tan/yellow
**Exudate Amount:** Moderate
**Skin color surrounding wound (peri wound/dressing):** Pink or normal for ethnic group
**Peripheral tissue edema:** Pitting edema extends <4 cm around wound
**Peripheral tissue induration** Not present
**Granulation tissue:** No granulation tissue present (Full thickness wounds only)
**Epithelization:**< 25 of wound covered
**Wound bed:** 10% slough/90% moist eschar -gray

69. On May 21, 2014, the wounds were assessed to be for right great toe.

**Location:** Right Great toe
**Onset type:** Community acquired
**Patient position:** Supine
**length:** 0.5 cm
**width:** 1.5 cm
**Depth:** 0 cm
**Stage:**
**Partial/Full thickness:** Obscured by necrosis (sDTI/unstageable)
**Edges:** Indistinct, diffuse, none clearly visible
**Undermining:** Not present (Active Wound)
**Tunneling:** Not present (Active Wound)
**Necrotic tissue type:** None visible
**Necrotic tissue amount:** None visible
**Exudate type:** None
**Exudate Amount:** Dry Wound
**Skin color surrounding wound (peri wound/dressing):** Pink or Normal for ethnic group
**Peripheral tissue edema:** No swelling or edema

16

Case ID: 160500836

**Peripheral tissue induration**: Not present
**Granulation tissue**: Skin intact or partial thickness wound
**Epithelization:** 100% wound covered, surface intact
**Wound bed**:
**Comments:** Lightening DTI-arterial

70.   On May 28, 2014, the wounds were assessed to be for sacrococcygeal area.

**Location:**  Sacrococcygeal
**Onset type:** Community acquired
**Patient position:** Left side
**length**: 2.5 cm (1 in)
**width:** 3.2 cm (1.3 in)
**Depth**: 0.2 cm (0.0 in)
**Stage**: Stage III
**Partial/Full thickness**: Full thickness loss involving damage or necrosis of subcutaneous tissue; may extend down to but no through underlying fascia; and /or mixed partial and full thickness and/or layers obscured by granulation tissue
**Edges**: Distinct, outline clearly visible, attached, even with base
**Undermining**: Not present (Active wound)
**Tunneling:** Not present (Active wound)
**Necrotic tissue type**: None visible
**Necrotic tissue amount**: None visible
**Exudate type**: Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Small
**Skin color surrounding wound (peri wound/dressing)**: Pink or normal for ethnic group
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue**: Bright, beefy red: 75% to 100% of wound filled and/or tissue overgrowth
**Epithelization:**< 25% of wound covered
**Wound bed**: 100% pink granulation

71.   On May 28, 2014, the wounds were assessed to be for right lateral lower leg.

**Location:** Right lateral lower leg
**Onset type:** Community acquired
**Patient position:** Supine
**length**: 16 cm (6.3 in)
**width:** 5.5 cm (2.2 in)
**Depth**: Unable to determine
**Stage**: Unstageable nonviable tissue
**Partial/Full thickness**: Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges**: Distinct, outline clearly visible, attached, even with wound base

17

Case ID: 160500836

**Undermining**: Not present (Active wound)
**Tunneling**: Not present (Active wound)
**Necrotic tissue type**: Adherent, soft, black eschar
**Necrotic tissue amount**: 70%
**Exudate type**: Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Moderate
**Skin color surrounding wound (peri wound/dressing)**: Pink or normal for ethnic group
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue**: Pink, and/or dull, dusky red and/or fills < + 25% of wound epithelization
**Epithelization:**< 25 of wound covered
**Wound bed**: 70% moist eschar/20% pink
**Comments:** Loosening from most posterior aspect of wound. Gel added to aid in autolytic debridement.

72. On May 28, 2014, the wounds were assessed to be for right great toe.

**Location:** Right Great toe
**Onset type:** Community acquired
**Patient position:** Supine
**length**: 0.5 cm
**width:** 1.5 cm
**Depth:** 0 cm
**Stage:**
**Partial/Full thickness**: Non-blanchable erythema on intact skin
**Edges:** Indistinct, diffuse, none clearly visible
**Undermining:** Not present (Active Wound)
**Tunneling:** Not present (Active Wound)
**Necrotic tissue type**: None visible
**Necrotic tissue amount**: None visible
**Exudate type**: None
**Exudate Amount**: None, Dry Wound
**Skin color surrounding wound (peri wound/dressing)**: Pink or Normal for ethnic group
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue:** Skin intact or partial thickness wound
**Epithelization:** 100% wound covered, surface intact
**Wound bed:**
**Comments:** Stable DTI, arterial related

73. On June 3, 2014, the wounds were assessed to be for sacrococcygeal area.

**Location:**  Sacrococcygeal

18

Case ID: 160500836

**Onset type**: Community acquired
**Patient position:** Left side
**length**: 1.1 cm (0.4 in)
**width:** 4 cm (1.6 in)
**Depth**: 0 cm (0 in)
**Stage**: Stage III
**Partial/Full thickness**: Full thickness loss involving damage or necrosis of subcutaneous tissue; may extend down to but no through underlying fascia; and /or mixed partial and full thickness and/or layers obscured by granulation tissue
**Edges**: Distinct, outline clearly visible, attached, even with base
**Undermining**: Not present (Active wound)
**Tunneling:** Not present (Active wound)
**Necrotic tissue type**: None visible
**Necrotic tissue amount**: None visible
**Exudate type**: Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Scant; wound moist but no observable exudate
**Skin color surrounding wound (peri wound/dressing)**: Pink or normal for ethnic group
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue**: Bright, beefy red: 75% to 100% of wound filled and/or tissue overgrowth
**Epithelization:** 25% to <50% of wound covered
**Wound bed**:
**Comments:** Resolving stage 3 wound, no change POC

74. On June 3, 2014, the wounds were assessed to be for right lateral lower leg.

**Location:** Right lateral lower leg
**Onset type**: Community acquired
**Patient position:** Supine
**length**: 15 cm (6.3 in)
**width:** 5 cm (2 in)
**Depth**: Unable to determine
**Stage**: Unstageable nonviable tissue
**Partial/Full thickness**: Obscured by necrosis/unstageable, deep tissue injury-purple or burgundy
**Edges**: Distinct, outline clearly visible, attached, even with wound base
**Undermining**: Not present (Active wound)
**Tunneling:** Not present (Active wound)
**Necrotic tissue type**: Adherent, soft, black eschar
**Necrotic tissue amount**: 50%
**Exudate type:** Serosanguineous: Thin, watery, pale red/pink
**Exudate Amount**: Moderate
**Skin color surrounding wound (peri wound/dressing)**: Pink or normal for ethnic group
**Peripheral tissue edema:** No swelling or edema

19

Case ID: 160500836

**Peripheral tissue induration**: Not present
**Granulation tissue**: Bright, beefy red: <75% and >25% of wound filled
**Epithelization:**< 25 of wound covered
**Wound bed**: 50% granulation/50% moist eschar
**Comments**: No signs/symptoms of infection. Continue POC

75.  On June 3, 2014, the wounds were assessed to be for right great toe.

**Location:** Right Great toe
**Onset type:** Community acquired
**Patient position:** Supine
**length**: 0.5 cm
**width**: 1.5 cm
**Depth**: 0 cm
**Stage**:
**Partial/Full thickness**: Obscured by necrosis (sDTI/unstageable)
**Edges**: Indistinct, diffuse, none clearly visible
**Undermining:** Not present (Active Wound)
**Tunneling:** Not present (Active Wound)
**Necrotic tissue type**: None visible
**Necrotic tissue amount**: None visible
**Exudate type**: None
**Exudate Amount**: None, Dry Wound
**Skin color surrounding wound (peri wound/dressing)**: Pink or Normal for ethnic group
**Peripheral tissue edema**: No swelling or edema
**Peripheral tissue induration**: Not present
**Granulation tissue**: Skin intact or partial thickness wound
**Epithelization:** 100% wound covered, surface intact
**Wound bed**:
**Comments:** DTI, arterial related

76.  On June 10, 2014, Mrs. Simmons went into cardiac arrest during the transfer from

Kindred Hospital-South Philadelphia to Clarkbruke in Plymouth Meeting, PA.

77.  Mrs. Simmons was revived post code and remained in Mercy Suburban Hospital where

she remained under their treatment and care until June 17, 2014 when she was discharged for

ventilator management.

78.  Mrs. Simmons diagnosis discharge was:

20

Case ID: 160500836

1. Status post cardiac arrest.
2. Ventilator dependent.
3. Dementia.
4. Diabetes mellitus.
5. Malnutrition.
6. Severe muscle deconditioning.
7. Degenerative arthritis.
8. Atrial fibrillation.
9. Hypertension.
10. Coronary artery disease.
11. Non-ST elevation myocardial infraction.
12. History of cyst of the beast.
13. Wound of sacral region.
14. Wound of the lower extremities.
15. Pneumonia
16. Deep vein thrombosis prophylaxis.
17. Hypokalemia.
18. Leukocytosis.
19. Hypoxia.
20. Pulmonary fibrosis.
21. History of PGE tube
22. History of tracheotomy.


The late Mrs. Simmons was diagnosed as not being terminally ill.

79. The late Mrs. Simmons was transferred to Aristacare at Meadow Springs in Plymouth,

PA where she expired on July 12, 2014, from respiratory failure and atrial fibrillation.

## FIRST COUNT

### Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, deceased and in his own right v. Defendants Simpson House, Inc., and Simpson House Foundation.

## NEGLIGENCE

80.    Plaintiff John Simmons, Administrator of the Estate of Ola Simons, deceased and in his

own right incorporates by reference paragraphs 1 through 66 of Plaintiff's  Complaint as if the

same were set forth at length herein.

Case ID: 160500836

81.   In order for Defendants to have Simpson House Nursing Home participate in the federal and state programs known as Medicare and Medicaid for medical and nursing care reimbursement, Defendants Simpson House, Inc., and Simpson House Foundation were required to meet certain specified requirements under federal and state laws and regulations, including but not limited to 42 C. F. R. §483.1 *et seq.*  See also 42 C. F. R. §483.75(a and b).

82.   Defendants Simpson House, Inc., and Simpson House Foundation knew and/or should have known that the late Ola Simmons was at high risk for dehydration and malnutrition on admission as per the Nutrition Risk Assessment dated November 14, 2013.

83.   However, Defendants Simpson House, Inc., and Simpson House Foundation did not timely and/or adequately by their staff, agents, officers, servants and employees, including but not limited to administrators physicians, registered nurses, licensed practical nurses, physical therapists, prepare nutrition assessments of the late Plaintiff's-decedent to prevent dehydration, and malnutrition and worsening of pressure sores.

84.   Defendants Simpson House, Inc, and Simpson House Foundation by their employees, failed to document nutrition care on their nutrition care progress notes, as per federal and state nursing home laws and regulations and professional nursing home standards of care.

85.   Over the course of the late Ola Simmons' admission to Simpson House, Defendants engaged in a pattern and practice of care that denied nursing services and treatment, including wound care, hydration, proper nutrition, medical services and treatment, and protection from infection to the late Ola Simmons. These acts of omissions constituted neglect and abuse under the applicable professional standards of care and the OBRA Regulations in that the nursing home staff failed to supervise the intake of water and food when the needed therapy and care was

22

Case ID: 160500836

seriously needed which caused harm to the Plaintiff's-decedent as more fully described herein.

86.   Defendants' deprivation of adequate medical and nursing care, assessments and treatment, included but were not limited to the development of septic shock caused by avoidable sacral ulcers, avoidable leg ulcers and wounds, caused by failure to turn and reposition skin infection, Escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning.

87.   The severity of the neglect of the late Ola Simmons while under the care of Defendants at Simpson House Nursing Home, accelerated the deterioration of her health and physical condition and resulted in physical and emotional injuries that caused septicemia, septic shock, avoidable sacral ulcers, avoidable leg ulcers and wounds, skin infection, escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, resulting in severe pain, suffering and mental anguish along with an unnecessary hospitalization and medical procedures.

88.   The Simpson House Defendants failed to perform timely and/or accurate skin assessments from 2013-2014 while the late Ola Simmons was a resident and/or patient at Simpson House Nursing Home, by their nursing and physician staff, thereby causing the development of avoidable conditions including septicemia, septic shock, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection.

89.   The Simpson House Defendants failed to timely implement any nursing and physical interventions and treatments to avoid and treat avoidable sacral decubital ulcers,

23

Case ID: 160500836

avoidable leg ulcers and wounds, skin infection, escherichia Coli Bacteria infection and renal

failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe

muscle deconditioning among other causes of the late Ola Simmons while the late Ola Simmons

was a resident/patient at Simpson House.

90.     The Simpson House Defendants failed to adequately monitor, evaluate and document

septic shock, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection,

escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c

difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, which

developed while the late Ola Simmons was a resident/patient of Simpson House Nursing Home.

91.     In addition to failure of Simpson House Defendants to timely and accurately assess

and document the late Ola Simmons and her physical condition for accurate medical and nursing

conditions, Defendants also, from 2013-2014, failed to provide her with enough food, water and

medications to prevent infections, to prevent septicemia, septic shock, avoidable sacral ulcers,

avoidable leg ulcers and wounds, skin infection, escherichia Coli Bacteria infection and renal

failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe

muscle deconditioning among other causes, along with the nursing and medical services to

diagnose, assess and/or evaluate, treat and/or cure these conditions.

92.     At no time did the Defendants Simpson House, Inc. document any skin breakdown

in violation of Pennsylvania Healthcare Regulations, OBRA regulations and professional

standards of care.

93.     At all times relevant hereto, Defendants were aware of the late Ola Simmons's

medical conditions and the care she required when Defendants represented that they could

Case ID: 160500836

adequately care for her needs.

94.    At all times relevant hereto, Simpson House Defendants ran a skilled nursing facility and/or rehabilitation hospital that claimed on their websites and other promotional materials to be equipped to care for residents/patients such as Plaintiff's-decedent.

95.    At all times pertinent hereto, Plaintiff's-decedent Ola Simmons was a resident of the Defendant Simpson House pursuant to the terms of a written Admission Agreement and, as such, she was under the exclusive care and control of the Defendants, their agents, officers, servants and/or employees, including but not limited to a licensed Nursing Home Administrator, a Director of Nursing, also including but not limited to physicians, licensed practical nurses, registered nurses, physical therapists and certified nurse assistants employed in 2014, and other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery.

96.    The Simpson House Defendants and their agents, officers, servants and/or employees, failed, refused and/or neglected to perform the duties to provide reasonable and adequate health care services, to and for Plaintiff's-decedent Ola Simmons, who was unable to attend to her own health and safety.

97.    The Simpson House Defendants and their agents, officers, servants and/or employees were negligent and careless in the care and treatment they provided to Plaintiff's-decedent Ola Simmons, and all of the alleged acts, omissions and occurrences herein described or performed by the Defendants.

98.    As a result of Defendant's negligence, carelessness and recklessness, Plaintiff's-

Case ID: 160500836

decedent was caused to suffer from permanent injury and death and Plaintiff's-decedent also suffered the aggravation and/or activation of pre-existing conditions, illnesses, ailments, and/or diseases, which accelerated the deterioration of her health, physical and mental condition, and more particularly, and without limitations, septic shock, avoidable sacral ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, neglect and abuse; and other body pain and damage, which were painful and ultimately led to her untimely death.

99.     The Defendants Simpson House, Inc., and Simpson House Foundation and their agents, officers, servants and/or employees, did willfully, wantonly and recklessly withhold reasonable and necessary health care services to Plaintiff-decedent.

100.     As a result of Defendants' willful or wanton, negligence, and reckless indifference to the rights of others, Defendants are liable to Plaintiff for compensatory and punitive damages together with interest and costs.

101.     Defendants Simpson House, Inc., and Simpson House Foundation, by their employees, failed to have its physician and nursing staff conduct adequate and complete physical examinations as required by professional standards of care and federal and state laws and regulations as there is nursing note or physician note which documents any pressure sores of the Plaintiffs decedent's pressure wounds.

102.     In addition, the Pennsylvania Code 28 Pa. Code §201 *et seq.*, requires that Defendants comply with all federal, state and local regulations with regard to long-term care facilities.

Case ID: 160500836

103.   The Defendants violated federal regulations known as OBRA regulations, which establish the minimum requirements to be followed by Defendants and also committed negligence by failure to adhere to these regulations, including but not limited to the following:

    a.   42 C. F. R. § 483.13(c)(2) the facility must ensure that all alleged violations involving mistreatment, neglect or abuse, including injuries of unknown source are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures, including to the State Survey and Certification Agency;

    b.   42 C. F. R. §483.30(a)(1) the facility must provide services by sufficient number of each of the following types of personnel on a twenty four (24) hour basis to provide nursing care to all residents in accordance with resident care plans (I) except when waived under paragraph © of this section, licensed nurses; and (ii) other nursing personnel, and in this case it is believed and therefore averred that Defendants did not have sufficient staff to turn and reposition and otherwise assess Ms. Simmons when required of.

    c.   42 C. F. R. § 483.25 each resident must receive and the facility must provide, the necessary care and services to attain and maintain the highest practicable physical, mental and psychological well-being, in accordance with the comprehensive assessment, and there was no comprehensive assessment.

Case ID: 160500836

d.    42 C.F.R. § 483.20 (b) (4) (iv) the facility failed to conduct an assessment after a significant change in resident's condition, which caused the Plaintiff's- decedent to leave the Nursing Home with pneumosepsis on April 13, 2014.

e.    42 C.F.R. §483.20(d)(1) Comprehensive Care Plans the facility must develop a comprehensive care plan that includes measurable objectives and timetables to meet a resident's medical, nursing, mental and psychosocial needs that are identified in the comprehensive assessment. The plan of care must deal with the relationship of items or services ordered to be provided (or withheld) to the facility's responsibility for fulfilling other requirements in these regulations, and the plan must be followed; Simpson House Defendants did not follow the nursing plan of care for skin integrity developed on November 11, 2013.

f.    42 C.F.R. §483.25(c)of the OBRA regulations based on the comprehensive assessment of a resident, the facility must ensure that (1) a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and (2) a resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing; Plaintiff's-decedent entered Simpson House with no pressure sores and it is averred that she developed same on her sacrum and right lower extremity, while in their care.

28

Case ID: 160500836

g.   42 C.F.R. §483.25(a)(3).  A facility must ensure that a resident who is unable to carry out activities of daily living receives the necessary services to maintain good nutrition, grooming and personal and oral hygiene; Plaintiff's-decedent was admitted to Roxborough Hospital on April 13, 2014 with malnutrition, infections of the skin and systematic infection.

h.   42 C.F.R. §483.25(1) states that (1) "[b]ased on a resident's comprehensive assessment, the facility must ensure that a resident (1) maintains acceptable parameters of nutritional status, such as body weight and protein levels, unless the resident's clinical condition demonstrates that this is not possible; and (2) receives a therapeutic diet when there is a nutritional problem."

I.   42 C.F.R. §483.25(j) states that "[t]he facility must provide each resident with sufficient fluid intake to maintain proper hydration and health.

j.   42  C.F.R. §483.75 (l) states that the facility must maintain accurate, complete, and easily accessible clinical records for each resident, and Simpson House did not maintain complete and accurate records for Plaintiff's decedent.

k.   42 C.F.R. §483.30 states that the facility must have sufficient nursing staff, and Simpson House did not have sufficient staff to provide the skincare and nursing supervision and treatment required by the federal regulations.

l.   42 C.F.R. §483.25 states that a facility must prevent a decline in the activities of daily living unless it is unavoidable, and Defendants Simpson

29

Case ID: 160500836

House permitted the Plaintiff's decedent health to decline so that she required external breathing equipment and P&G tubes for nutrition.

m.  42 CFR §483.65 states that, among other things, that a nursing home must investigate, control and prevent infections in the facility and decide procedures should be applied to an individual resident, and Plaintiff's decedent acquired communicable deceases, including C diff and E Coli.

104.  At all times material hereto, Simpson House Defendants' breach of their non-delegable duties, and Defendants' negligence, carelessness, and recklessness, individually and/or acting by and through their officers, board members, physicians, physicians' assistants, nurses, certified nurses' aides, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists,  social workers and others that may be revealed by additional discovery and administrators who examined, treated and/or communicated the condition of the late Mrs. Simmons, and through the administrative personnel responsible for hiring, retaining and/or dismissing staff, staff supervision and policy making and enforcement, as well as any agents, servants, employees, contractors, subcontractors and/or consultants of the Defendants consisted of the following acts and omissions in the care and treatment of Ola Simmons:

a.  permitting neglect of the Plaintiff's-decedent by failure to provide wound care, incontinence care, infection control care, nutrition, physician care, nursing care, hydration,  infection control and skin care and pressure ulcer care;

b.  failure to notify the physician and the families in a timely manner of action

30

which affected the safety and well-being of the Plaintiff-decedent;

c.   failure to hire a sufficient number of trained and competent nursing staff;

d.   violating Pennsylvania Statutes, and Pennsylvania Administrative

Regulations 28 Pa.§ 211.5(f), § 211.10(d), § 211.11(a), § 211.12(a);

e.   failure to create an adequate pressure sore risk assessment;

f.   failure to adhere to the plan of care for avoidable pressure sores;

g.   failure to adhere to the plan of care for hydration;

h.   failure to adhere to the plan of care for nutrition;

I.   failure to adhere to the plan of care for infection control and prevention;

k.   failure to take preventative measures including, but not limited to,

adequate supervision and institution of a pressure sore program;

j.   failure to discharge employees when the facility knew or should have

known of the employees' propensity for negligent care of the Plaintiff-

decedent;

k.   failure to modify the above plans of care when the plans of care were

inadequate to the needs of the patient Ola Simmons;

l.   failure to notify supervisors of the on-call physician's failure to properly

care for the Plaintiff-decedent, as required by regulations in effect at the

time of this incident;

m.   failure to prevent Plaintiff's-decedent from developing pressure sores; and

n.   failure to use adequate preventive devices and measures to treat pressure

sores.

31

Case ID: 160500836

o.     failure to document the care treatment and medical assessments, treatment and care of the late Ola Simmons.

105.     The Plaintiff's-decedent Ola Simmons, fell within the class of persons that the statutory rules, regulations and laws were intended to protect by virtue of 42 C. F. R. 483.1 *et seq.* and 28 Pa. Code §211 *et seq.*, thus entitling the Plaintiff to adopt such laws as the standard of care for measuring Defendants' conduct. Thus, Simpson House Defendants' conduct amounted to negligence and breach of professional standards of care.

106.     At all relevant times hereto, the Simpson House Defendants knew or should have known that their residents were elderly and/or infirm, and in need of particular care and supervision and specifically that Ola Simmons, deceased, required proper hydration, nutrition, wound care, protection from infectious disease and control of her diabetes.

107.     As a direct and proximate result of the negligence of the Simpson House Defendants, its agents, officers, servants and/or employees, and other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery, Plaintiff-decedent Ola Simmons was caused to sustain serious and permanent personal injuries, including acute kidney injury as a result of dehydration, clostridium difficile, myocardial infraction (not elevated), pressure wounds of the right lower extremity and sacral wound, pneumosepsis, malnutrition; dehydration, debridement of wounds.

108.     The Defendants failed to exercise adequate care in the supervision of their elderly residents, such as the Plaintiff's-decedent, to whom they owed such a duty by  providing adequate medical care, medications and nursing care, falling below medical and nursing

Case ID: 160500836

standards of care.

109.    As a direct and proximate result of the aforesaid carelessness, reckless indifference, willful or wanton behavior and negligence of the Defendants and their employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery, the Plaintiff's-decedent Ola Simmons sustained severe personal injuries including her death, and the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, deceased and in his own right was forced to incur medical expenses in the care and treatment of said injuries.

110.    The aforementioned acts of the Defendants Simpson House Inc. And Simpson House Foundation were willful, wanton, outrageous and reckless with complete disregard to the rights of Plaintiff-decedent and in reckless indifference to the late Ola Simmons and the rights of others, and specifically shocked the conscience of the community.

111.    At all times relevant hereto, Simpson House Defendants failed to operate, manage, maintain or control the Simpson House Nursing Home in compliance with professional standards, including nursing and medical standards.

112.    Defendants are responsible on the basis of *respondeat superior* and/or vicarious liability for the negligence, abuse and neglect of their employees and/or contractors  and servants, workmen and agents including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery.

113.    Defendants Simpson House, Inc and Simpson House Foundation and their

33

Case ID: 160500836

employees and servants did neglect the Plaintiff's-decedent Ola Simmons by failing to provide the nutrition, goods and services, medical care, nursing care and medications she needed.

114.    As a result of the wanton or willful behavior and reckless indifference to the rights of others of Defendants and their staff, Defendants Simpson House, Inc and Simpson House Foundation are also liable to Plaintiff for compensatory and punitive damages together with interest and costs.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right, demands judgment against the Defendants in an amount in excess of $50,000.00 together with punitive damages.

## SECOND COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendants Simpson House, Inc., and Simpson House Foundation.

### CORPORATE OR DIRECT NEGLIGENCE

115.    Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 114 of Plaintiff's Complaint as if the same were set forth at length herein.

116.    This is a civil liability case for which it has become necessary for the Plaintiff to bring a lawsuit by reason of the profound neglect suffered by Ola Simmons, deceased during her residency at Simpson House at 2101 Belmont Ave., Philadelphia, Pennsylvania 19131, which resulted in great physical injuries, mental injuries and her death.

117.    The serious bodily injuries and death of Plaintiff's-decedent was proximately

34

Case ID: 160500836

caused by the willful or wanton conduct of Defendants along with their reckless indifference to the rights of others, the negligence and negligence per se of the named Defendants, and/or their agents, officers, servants and/or employees, and other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery.

118.   At all times material to this lawsuit, statutory and regulatory duties imposed by the Commonwealth of Pennsylvania and the United States of America were in full force and effect that were designed to protect a class of persons, to wit: the nursing home residents of this Commonwealth and this country, of which the late Ola Simmons was a member.  As a member of such class, the late Ola Simmons was entitled to protection of these laws, namely the Pennsylvania Code and the Code of Federal Regulations, and the rules and regulations promulgated thereunder, specifically but not limited to 28 Pa.§ 211.5(f), § 211.10(d), §211.11(a), § 211.12(a), as well as OBRA regulations, generally and more specifically, 42 C. F. R § 483.15, §483.20(k), § 483.20(h)(2), § 483.30, §483.60, 42 C. F. R. §482.1 *et seq.* and others listed previously in this Complaint.

119.   Defendants Simpson House Inc. And Simpson House Foundation, by and through their agents, officers, servants and/or employees, including but not limited to administrators, physicians, licensed practical nurses, registered nurses, certified nurse assistants and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery, employed in 2014, engaged in a pattern and practice of ongoing neglect.

35

Case ID: 160500836

More specifically, Defendants continually and repeatedly engaged in negligent conduct and reckless indifference to the rights of others, which included:

a.   the continuing failure to provide sufficient numbers of staff to meet said the late Ola Simmons's fundamental care needs, including adequate supervision to prevent pressure sores;

b.   the ongoing failure to properly supervise, monitor, observe, and assess the late Ola Simmons's medical condition;

c.   repeated failure to hire and train appropriate medical and nursing personnel to properly monitor, supervise, and/or treat the late Ola Simmons's medical condition;

d.   the systemic and ongoing retention of and assignment of unfit, unqualified and incompetent direct care staff;

e.   the ongoing failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;

f.   the continuing failure to provide 24-hour nursing services from enough qualified nursing personnel to meet the total nursing needs of the late Ola Simmons;

g.   the ongoing failure to assure that nursing personnel staffing, including registered nurses, certified nurse aides and licensed practical nurses, was sufficient to provide 24-hour nursing service, and was increased whenever necessary, to assure that the late Ola Simmons, was protected from harm,

36

Case ID: 160500836

injury, abuse and neglect and to enhance the quality of life, dignity, and respect of each nursing home resident, including the late Ola Simmons;

h.   the repeated failure to prevent the late Ola Simmons from suffering pain and death as a result of preventable wounds and avoidable pressure sores;

I.   the failure to prevent the late Ola Simmons from suffering pain and death as a result of dehydration;

j.   the failure to prevent the late Ola Simmons from suffering pain as a result of malnutrition;

k.   the failure to prevent the late Ola Simmons from suffering pain as a result of sepsis due to urinary tract infection;

l.   the failure to prevent the late Ola Simmons from suffering pain and death due to uncontrolled diabetes and failed diabetic care;

m.   the continuing failure to monitor the late Ola Simmons for signs and symptoms of pain, and to intervene and respond in a timely manner to the continuing presence of the same;

n.   the ongoing failure to obtain and provide timely and appropriate medical treatment and nursing intervention to the late Ola Simmons;

o.   the repeated failure to notify the physician of significant conditions and changes in condition;

p.   failure to prevent the development of avoidable wounds and  pressure sores including the monitoring, documentation of, prevention and treatment of those wounds;

37

Case ID: 160500836

q.     the continuing failure to follow physician's orders;

r.     neglect of Plaintiff's-decedent by their failure by omission to provide adequate medical care and treatment, nutrition, hydration, medications, nursing care and treatment for her medical condition;

s.     the repeated failure to establish and implement appropriate corporate budgeting policies which were consistent with the needs of residents including the late Ola Simmons that Defendants had accepted and promised to care for in accordance with the minimum standards prescribed by the state and federal codes and regulations promulgated under such statutes;

t.     the continuing failure to establish, implement and/or enforce appropriate corporate safety, training, staffing, and fundamental nursing care and other policies to prevent harm to residents and avoid the known consequences of inadequate care;

u.     the callous disregard for the known dangers caused by Defendants' widespread and continued practice of understaffing, thereby exposing the late Ola Simmons and other residents to life-threatening conditions; and

v.     failure of the nursing home to administer the Simpson House Nursing Home in compliance with federal, state and local laws and professional standards.

120.   At all times relevant hereto, Defendants Simpson House, Inc. and Simpson House Foundation as corporate institutions, failed to adhere, formulate and develop and/or enforce nursing home policies and procedures pursuant to professional standards and federal, state and

Case ID: 160500836

local laws to protect the Plaintiff-decedent Ola Simmons from harm caused by dehydration, malnutrition, abuse, neglect, uncontrolled diabetes, development of avoidable Stage IV pressure sores on her lower extremities and on her sacrum, and coccyx, development of sepsis, urinary tract infection and acute renal failure due to dehydration.

121.    Defendants were responsible for the total health care of Plaintiff-decedent Ola Simmons while she was a resident at Simpson House Nursing Home from 2013-2014.

122.    Defendants' failure to adequately care for Plaintiff-decedent Ola Simmons according to professional standards, federal, state and local laws included their failure to oversee all persons who practiced medicine within the nursing home facility walls including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants employed from '2013' through the time of her death, also including but not limited to, other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery.

123.    At all times relevant hereto, Defendants knew or should have known that these acts or omissions occurred throughout their facility and posed a serious threat to the safety and welfare of residents such as the late Ola Simmons. Specifically, that knowledge was acquired as a result of complaints by the Plaintiff-decedent's representatives, the Pennsylvania Department of Health and other residents and their families. Moreover, Defendants' actions were in reckless disregard for the health and well-being of Plaintiff-decedent Ola Simmons. Defendants' policies and/or failure to follow existing policies and financial decisions caused, *inter alia,*: a) dangerous staffing levels at the facility, b) patient population needs that exceeded the capacity of the limited

39

Case ID: 160500836

number of caregivers on duty; c) incompetent caregivers and, d) ongoing neglect of the late Ola Simmons.

124.     Each and all of the aforementioned acts, both omission and commission, as well as those yet to be discovered, constituted corporate and/or direct negligence and was a direct and proximate cause of the incident made the basis of this suit resulting in the injuries and damages including but not limited to avoidable Stage IV pressure sores, acute renal failure, dehydration, malnutrition and sepsis, physical pain and mental anguish which contributed to the death of the late Ola Simmons, and extensive expenses for medical and hospital care and treatment.

125.     At all times relevant hereto, Defendants Simpson House, Inc. And Simpson House Foundation through their corporate officers, governing board, board of directors, administrators, managers and/or operators had knowledge of, ratified and/or authorized all of the acts and omissions of its employees hereto referenced in this Complaint which ultimately caused the injuries and death of Ola Simmons.

126.     Defendants, through their advertising and promotional material and information sheets, advertised the Simpson House Nursing Home to the general public as being able to provide skilled nursing and medical care to sick, elderly, frail and vulnerable individuals such as the late Ola Simmons.

127.     The aforementioned acts of neglect were known to the corporation who acted with complete disregard to the rights of Plaintiff-decedent and in reckless indifference to her and Defendants' conduct specifically shocks the conscience of the community.

128.     As a result of the wanton and willful conduct and reckless indifference of Defendants, Defendants are liable to Plaintiff for compensatory and punitive damages.

Case ID: 160500836

129.     Direct liability has been defined by the Pennsylvania Supreme Court under

*Scampone v. Highland Park Care Center*, 11 A. 3(d) (Pa. Super. 2010), aff'd on other grounds,

57 A. 3(d) 582 (2012), as set forth under the restatement of Torts 2nd §323.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola

Simmons and in his own right, demands judgment against the Defendants in an amount in excess

of $50,000.00 together with punitive damages.

## THIRD COUNT

## John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendants Simpson House, Inc.,  and Simpson House Foundation.

## NEGLIGENCE PER SE

130.   Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in

his own right incorporates by reference paragraphs 1 through 129 of Plaintiff's  Complaint as if

the same were set forth at length herein.

131.    28 Pa. Code § 201 *et seq.*, requires that Defendants comply with all federal, state

and local regulations with regard to long-term care facilities.

132.    42 C. F. R. § 483.75(b) requires that Defendants comply with all federal, state and

local regulations with regard to long-term care facilities.

133.     The Defendants violated Pennsylvania regulations, including but not limited to the

following:

   a. 28 Pa. Code § 211.5(f).  At a minimum, the resident's clinical record shall

      include physicians' orders, observation and progress notes, nurses' notes, medical

41

Case ID: 160500836

and nursing history and physical examination reports; identification information, admission data, documented evidence of assessment of a resident's needs, establishment of an appropriate treatment plan and plans of care and services provided; hospital diagnoses authentication—discharge summary, report from attending physician or transfer form, diagnostic and therapeutic orders, reports of treatments, clinical findings, medication records and discharge summary including final diagnosis and prognosis or cause of death. The information contained in the record shall be sufficient to justify the diagnosis and treatment, identify the resident and show accurately documented information;

b.  28 Pa. Code § 211.10(d).  The policies shall be designed and implemented to ensure that the resident receives proper care to prevent pressure sores and deformities; that the resident is kept comfortable, clean and well-groomed; that the resident is protected from accident, injury and infection; and that the resident is encouraged, assisted and trained in self-care and group activities;

c.  28 Pa. Code § 211.11(a).  The facility shall designate an individual to be responsible for the coordination and implementation of a written resident care plan. This responsibility shall be included as part of the individual's description 28 Pa.Code § 211.12(a). The facility shall prove services by sufficient numbers of personnel on a 24-hour basis to provide nursing care to meet the needs of all residents.

134.    Defendants are required to adhere to federal law and regulations as a condition for participation in the Medicare program.  See 42 U.S.C. §1396r *et seq.* and 42 C.F.R. 483.1 *et seq.*

135.    The Defendants violated OBRA regulations, which establish the minimum standard of

42

Case ID: 160500836

care to be followed by defendant, including but not limited to the following:

    a.    42 C.F.R. § 483.13(c)(2). The facility must ensure that all alleged violations involving mistreatment, neglect, or abuse, including injuries of unknown source, and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law thorough established procedures (including to the State survey and certification agency);

    b.    42 C.F.R § 483.15(h)(1). The facility must provide a safe, clean comfortable, and homelike environment, allowing the resident to use his or her personal belongings to the extent possible.

    c.    42 C.F.R. § 483.20(b)(2)(ii). The facility must conduct a comprehensive assessment of a resident within 14 calendar days after the facility determines or should have determined, that there has been a significant change in the resident's physical or mental condition. Here the facility failed to conduct an assessment after a significant change in resident's condition, which included here risk for developing bed sores.

    d.    C. F. R. §483.20(k).  The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.

    e.    42 C. F. R. § 483.25.  Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest

Case ID: 160500836

practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

f.   42 C. F. R. § 483.25©.  The facility must ensure that (1) A resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and (2) A resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing;

g.   42 C. F. R. § 483.30.  The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care.

h.   42 C.F.R. § 483.30(a)(1)(I) and (ii).  The facility must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans (I) except when waived under paragraph© of this section, licensed nurses; and (ii) other nursing personnel;

i.    42 C.F.R. § 483.40(c)(1).  The resident must be seen by a physician at least once every 30 days for the first 90 days after admission, and at least once every 60 days thereafter;

j.   42 C.F.R. § 483.60(a).  A facility must provide pharmaceutical services (including procedures that assure the accurate acquiring, receiving,

Case ID: 160500836

dispensing, and administering of all drugs and biologicals) to meet the needs of each resident.

k.      42 C. F. R. §483.25(a)(3).  A facility must ensure that a resident who is unable to carry out activities of daily living receives the necessary services to maintain good nutrition, grooming and personal and oral hygiene.

l.      42 C.F.R. §483.25(d) states that "[b]ased on the resident's comprehensive assessment, the facility must ensure that a resident who is incontinent of bladder receives appropriate treatment and services to prevent urinary tract infections and to restore as much normal bladder function as possible."

m.      C.F.R. §483.25(1) states that (1) "[b]ased on a resident's comprehensive assessment, the facility must ensure that a resident (1) maintains acceptable parameters of nutritional status, such as body weight and protein levels, unless the resident's clinical condition demonstrates that this is not possible; and (2) receives a therapeutic diet when there is a nutritional problem."

n.      42 C. F. R. §483.25(j) states that "[t]he facility must provide each resident with sufficient fluid intake to maintain proper hydration and health.

136.    At all relevant times hereto, the Defendants knew or should have known that its residents were elderly and/or in need of particular care and supervision.  The Defendants failed to exercise adequate care in the supervision of its residents, such as the Plaintiff, to whom it owed such a duty.  As a direct and proximate result of the negligence of the Defendants, their agents, officers, servants and/or employees, including but not limited to physicians, licensed

Case ID: 160500836

practical nurses, registered nurses, and certified nurse assistants employed from 2013 through the time of her death including but not limited to, dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery, Plaintiff's-decedent Ola Simmons was caused to sustain serious and permanent personal injuries, including but not limited to pressure sores, septic shock, avoidable sacral ulcers, avoidable leg ulcers and wounds, skin infection, escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, neglect and abuse; and other body pain and mental anguish, and liability for extensive expenses for medical and hospital care and treatment.

137.    In *Grammar v. John J. Kane Regional Centers-Glen Hazel*, 570 F. 3d.520, (3d. Cir. 2009), pet. re-hearing denied en banc (3rd Cir. 2009), cert. denied, U.S. Supreme Court, 2010U.S. Lexis 1292 (U.S. Feb. 22, 2010), the Third Circuit Court of Appeals held that, *inter alia,* Congress intended to create individual rights in drafting and adopting the OBRA amendments; that these rights could be enforced and nursing home residents such as the Plaintiff-decedent Ola Simmons fell within the zone of interest that the statute is meant to protect.

138.    Upon information and belief, at all times material hereto, the Defendants were vertically integrated corporation that was controlled by boards of directors and corporate officers who were responsible for the operation, planning, management and quality control of the facility Simpson House Nursing Home.

139.    At all times material hereto, the control exercised over the facility by the Defendants included, *inter alia*:  budgeting, marketing, human resource management, training,

46

Case ID: 160500836

staffing, billing and invoicing and the creation and implementation of policy and procedure manuals used by the facility.

140.    The Defendants also exercised control over reimbursement, quality care assessment and compliance, licensure, certification, and all financial, tax and accounting issues through control of the fiscal policies of Defendants' facility.

141.    The boards of directors and corporate officers of the Defendants Simpson House utilized survey results and quality indicators to monitor the care being provided at Defendants' facility, the Simpson House Nursing Home from 2013-2014.

142.    As part of their duties and responsibilities, the Defendants owed a duty to establish policies and procedures that address the needs of the residents of Defendants' facilities, such as the late Ola Simmons, with respect to the proper recognition and/or treatment of medical conditions, such as those experienced by the late Ola Simmons, so as to ensure that timely and appropriate care was provided for such conditions whether by Defendants' staff, or obtained from other outside medical providers.

143.    The actions of the Defendants were designed to increase reimbursements by governmental programs, which upon information and belief, were and are a primary source of income for the facility.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons and John Simmons in his own right demands judgment against the Defendants Simpson House, Inc., and Simpson House Foundation, in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

### FOURTH COUNT

47

Case ID: 160500836

**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased
and in his own right v. Defendant Prime Healthcare Services- Roxborough, LLC d/b/a
Roxborough Memorial Hospital.**

### NEGLIGENCE

144.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in
his own right incorporates by reference paragraphs 1 through 143 of Plaintiff's Complaint as if
the same were set forth at length herein.

145.   Plaintiff's decedent Ola Simpson stayed at Roxborough Hospital from April 13,
2014 until May 5, 2014. It was determined that the Plaintiff's decedent had avoidable pressure
sores on her sacrum and right lateral, lower leg, and right toe, which were unstageable and
obscured by necrosis, and unstageable along with septemic swelling or anasacra upon admission
to Kindred Hospital-South Philadelphia on May 5, 2014.

146.     At all times relevant thereto, Roxborough Hospital through their agents, etc
operated a hospital in the Commonwealth of Pennsylvania and was required to operate under
state health laws and regulations and federal medicare regulations related to patient safety.

147.     The negligence of Prime Healthcare Services,-Roxborough, LLC d/b/a
Roxborough Memorial Hospital included, but was not limited to the following, to wit:

    (a)   permitting neglect of the Plaintiff's decedent Ola Simmons;

    (b)   failure to notify the physician and the Plaintiff's family in a timely manner of
action which affected the Plaintiff's safety and well-being;

    ( c)   failure to hire a sufficient number of trained and competent staff;

    (d)   violating Pennsylvania Statues, and Pennsylvania Administrative Regulations 28
        Pa.§211.5(f), §211.10(d), §211.12(a), as well as OBRA regulations, specifically,

48

Case ID: 160500836

42 C. F. R §483.15, §483.20(k),§483.20(h)(2),§483.30, §483.60;

(e)   failure to create an adequate pressure sore risk assessment;

(f)   failure to adhere to the plan care;

(g)   failure to take preventative measures including, but not limited to, adequate

supervision and institution of a pressure sore program;

(h)   failure to discharge employees when the facility knew or should have known of

the employee's propensity for negligent care of the Plaintiff;

(j)   failure to properly train employees to deal with residents who are unable to care

for themselves;

(k)   failure to require modification of the plan when the plan of care was inadequate to

the needs of the patient; and

(l)   failure to prevent Plaintiff-decedent from developing pressure sores.

**WHEREFORE,** the Plaintiff, John Simmons, Administrator of the Estate of Ola

Simmons and in his own right, demands judgment against the Defendant Prime Healthcare

Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital in an amount in excess of

$50,000.00 together with punitive damages.

## FIFTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendant Prime Healthcare Services- Roxborough, LLC d/b/a Roxborough Memorial Hospital

### CORPORATE AND/OR DIRECT NEGLIGENCE

148.    Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in

his own right incorporates by reference paragraphs 1 through 147 of Plaintiff's  Complaint as if

49

Case ID: 160500836

the same were set forth at length herein.

149.     This is a civil liability case for which it has become necessary for the Plaintiff to bring a lawsuit by reason of the profound neglect suffered by Ola Simmons, deceased during her residency at Simpson House at 2101 Belmont Avenue, Philadelphia, Pennsylvania 19131, which resulted in great physical injuries, mental injuries and her death.

150.     The serious bodily injuries and death of Plaintiff-decedent was proximately caused by the willful or wanton conduct of Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital along with their reckless indifference to the rights of others, the negligence and the direct negligence of the named Defendant, and/or their agents, officers, servants and/or employees, and other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery,

151.     At all times material to this lawsuit, statutory and regulatory duties imposed by the Commonwealth of Pennsylvania and the United States of America were in full force and effect that were designed to protect a class of persons, to wit: the nursing home residents of this Commonwealth and this country, of which the late Ola Simmons was a member.  As a member of such class, Ola Simmons, deceased was entitled to protection of these laws, namely the Pennsylvania Code and the Code of Federal Regulations, and the rules and regulations promulgated thereunder, specifically but not limited to 28 Pa.§ 211.5(f), § 211.10(d), §211.11(a), § 211.12(a), as well as OBRA regulations, generally and more specifically, 42 C. F. R. 482.1 *et seq.*

50

Case ID: 160500836

152.    Defendant, Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital violated these fundamental laws and regulations on a routine basis engaging in a pattern and practice of conduct prohibiting by law.

153.    Defendant, Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital by and through its agents, officers, servants and/or employees who were employed from April, 2014 through the time of her death, engaged in a pattern and practice of ongoing neglect. More specifically, Defendant continually and repeatedly engaged in negligent conduct, which included:

      a.    the continuing failure to provide sufficient numbers of staff to meet said residents's fundamental care needs, including adequate supervision to prevent injury and accident, including her need for assistance with transfers;

      b.    the ongoing failure to properly supervise, monitor, observe, and assess the late Ola Simmons's medical condition;

      c.    repeated failure to hire and train appropriate medical and nursing personnel to properly monitor, supervise, and/or treat the late Ola Simmons's medical condition;

      d.    the systemic and ongoing retention of and assignment of unfit, unqualified and incompetent direct care staff;

      e.    the ongoing failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;

      f.    the continuing failure to provide 24-hour nursing services from enough

Case ID: 160500836

qualified nursing personnel to meet the total nursing needs of the late Ola Simmons;

g.   the ongoing failure to assure that nursing personnel staffing, including registered nurses, certified nurse aides and licensed practical nurses, was sufficient to provide 24-hour nursing service, and was increased whenever necessary, to assure that the late Ola Simmons, was protected from harm, injury, abuse and neglect and to enhance the quality of life, dignity, and respect of each nursing home resident, including the late Ola Simmons;

h.   the repeated failure to prevent the late Ola Simmons from suffering pain and death as a result of preventable wounds and avoidable pressure sores;

I.   the continuing failure to monitor the late Ola Simmons for signs and symptoms of pain, and to intervene and respond in a timely manner to the continuing presence of the same;

I.   the ongoing failure to obtain and provide timely and appropriate medical treatment and nursing intervention to the late Ola Simmons;

k.   the repeated failure to notify the physician of significant conditions and changes in condition;

l.   failure to prevent the development of avoidable wounds and  pressure sores including the monitoring, documentation of, prevention and treatment of those wounds;

m.   the continuing failure to follow physician's orders;

n.   neglect of Plaintiff-decedent by their failure by omission to provide adequate

52

medical care and treatment, nutrition, hydration, medications, nursing care

and treatment for her medical condition;

o.  failure to report neglect as required by law;

p.  the continuing failure to establish, implement and/or enforce appropriate

corporate safety, training, staffing, and fundamental nursing care and other

policies to prevent harm to residents and avoid the known consequences of

inadequate care;

q.  the callous disregard for the known dangers caused by Defendant's

widespread and continued practice of understaffing, thereby exposing the

late Ola Simmons and other residents to life-threatening conditions.

154.  Each and all of the aforementioned acts, both omission and commission, as well

as those yet to be discovered, constitute direct corporate negligence and was a direct and

proximate cause of the incident made the basis of this suit resulting in the injuries and damages

including but not limited to avoidable Stage IV pressure sores, renal failure, dehydration,

malnutrition and sepsis, physical pain and mental anguish which contributed to the death of Ola

Simmons, and extensive expenses for medical and hospital care and treatment.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola

Simmons and in his own right, demands judgment against the Defendant in an amount in excess

of $50,000.00 together with punitive damages.

## SIXTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendant Kindred Hospital-South Philadelphia

53

Case ID: 160500836

**NEGLIGENCE**

155.    Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, incorporates by reference paragraphs 1 through 154 of Plaintiff's Complaint as if the same were set forth at length herein.

156.    The Plaintiff's decedent Ola Simmons was admitted to Kindred Hospital-South Philadelphia on May 5, 2014 and was discharged on June 10, 2014.

157.    On admission to Kindred Hospital-South Philadelphia, the late Ola Simmons was diagnosed with avoidable pressure wounds of the sacrum and coccyx, right lower extremity, wounds of the right toe, malnutrition and dehydration.

158.    The negligence of Kindred Hospital-South Philadelphia included, but was not limited to the following, to wit:

(a)   permitting neglect of the Plaintiff's decedent Ola Simmons;

(b)   failure to notify the physician and the Plaintiff's family in a timely manner of action which affected the Plaintiff's safety and well-being;

( c)   failure to hire a sufficient number of trained and competent staff;

(d)   violating Pennsylvania Statues, and Pennsylvania Administrative Regulations 28 Pa.§211.5(f), §211.10(d), §211.12(a), as well as OBRA regulations, specifically, 42 C. F. R §483.15, §483.20(k),§483.20(h)(2),§483.30, §483.60;

(e)   failure to create an adequate pressure sore risk assessment;

(f)   failure to adhere to the plan care;

(g)    failure to take preventative measures including, but not limited to, adequate

Case ID: 160500836

supervision and institution of a pressure sore program;

(h)    failure to discharge employees when the facility knew or should have known of the employee's propensity for negligent care of the Plaintiff;

(j)    failure to properly train employees to deal with residents who are unable to care for themselves;

(k)   failure to require modification of the plan when the plan of care was inadequate to the needs of the patient; and

(l)    failure to prevent Plaintiff from developing pressure sores.

159.    As a direct and proximate result of the negligence of the Defendants, their agents, officers, servants and/or employees who were employed from 2014 through the time of her death, Plaintiff's decedent Ola Simmons was caused to sustain serious personal injuries  such as septicemia, septic shock, avoidable sacral ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection and renal failure due to dehydration, infection caused by c difficile, pneumosepsis, malnutrition, severe muscle deconditioning among other causes, which developed while the late Ola Simmons was a patient at Kindred Hospital-South Philadelphia.

**WHEREFORE,** the Plaintiff, John Simmons, Administrator of the Estate of Ola Simmons and in his own right, demands judgment against the Defendant Kindred Hospital South Philadelphia in an amount in excess of $50,000.00 together with punitive damages.

<u>**SEVENTH COUNT**</u>

<u>**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons,**</u>
<u>**deceased and in his own right v. Defendant  Kindred Hospital-South Philadelphia**</u>

<u>**DIRECT OR CORPORATE NEGLIGENCE**</u>

55

160.   Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 159 of Plaintiff's Complaint as if the same were set forth at length herein.

161.   This is a civil liability case for which it has become necessary for the Plaintiff to bring a lawsuit by reason of the profound neglect suffered by the late Ola Simmons, deceased during her treatment at Kindred Hospital-South Philadelphia, located at 1930 South Broad Street, Philadelphia, PA 19145, which resulted in great physical injuries, mental injuries and her death.

162.   The serious bodily injuries and death of Plaintiff-decedent was proximately caused by the willful or wanton conduct of Defendants along with their reckless indifference to the rights of others, the negligence and negligence per se of the named Defendants, and/or their agents, officers, servants and/or employees, and other employees, agents, officers and servants, including but not limited to dieticians, physical therapists, occupational therapists, rehabilitation therapists, nutritionists, recreation therapists, and social workers and others that may be revealed by additional discovery,

163.   At all times material to this lawsuit, statutory and regulatory duties imposed by the Commonwealth of Pennsylvania and the United States of America were in full force and effect that were designed to protect a class of persons, to wit: the nursing home residents of this Commonwealth and this country, of which the late Ola Simmons was a member. As a member of such class, the late Ola Simmons was entitled to protection of these laws, namely the Pennsylvania Code and the Code of Federal Regulations, and the rules and regulations promulgated thereunder, specifically but not limited to 28 Pa.§ 211.5(f), § 211.10(d), §211.11(a), § 211.12(a), as well as OBRA regulations, generally and more specifically, 42 C. F. R. § 483.15,

56

Case ID: 160500836

§483.20(k), § 483.20(h)(2), § 483.30, §483.60, 42 C. F. R. §482.1 *et seq.* and others listed previously in this Complaint.

164.   Defendant, Kindred Hospital-South Philadelphia violated these fundamental laws and regulations on a routine basis engaging in a pattern and practice of conduct prohibiting by law.

165.   Defendant, Kindred Hospital-South Philadelphia by and through its agents, officers, servants and/or employees who were employed from 2014 through the time of her death, engaged in a pattern and practice of ongoing neglect. More specifically, Defendant continually and repeatedly engaged in negligent conduct, which included:

a.   the continuing failure to provide sufficient numbers of staff to meet said residents's fundamental care needs, including adequate supervision to prevent injury and accident, including her need for assistance with transfers;

b.   the ongoing failure to properly supervise, monitor, observe, and assess Ola Simmons's medical condition;

c.   repeated failure to hire and train appropriate medical and nursing personnel to properly monitor, supervise, and/or treat Ola Simmons's medical condition;

d.   the systemic and ongoing retention of and assignment of unfit, unqualified and incompetent direct care staff;

e.   the ongoing failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;

57

Case ID: 160500836

f.   the continuing failure to provide 24-hour nursing services from enough qualified nursing personnel to meet the total nursing needs of the late Ola Simmons;

g.   the ongoing failure to assure that nursing personnel staffing, including registered nurses, certified nurse aides and licensed practical nurses, was sufficient to provide 24-hour nursing service, and was increased whenever necessary, to assure that the late Ola Simmons, was protected from harm, injury, abuse and neglect and to enhance the quality of life, dignity, and respect of each nursing home resident, including the late Ola Simmons;

h.   the repeated failure to prevent the late Ola Simmons from suffering pain and death as a result of preventable wounds and avoidable pressure sores;

i.   the failure to prevent the late Ola Simmons from suffering pain and death as a result of dehydration;

j.   the failure to prevent the late Ola Simmons from suffering pain as a result of malnutrition;

k.   the failure to prevent the late Ola Simmons from suffering pain as a result of sepsis due to urinary tract infection;

l.   the failure to prevent the late Ola Simmons from suffering pain and death due to uncontrolled diabetes and failed diabetic care;

m.   the continuing failure to monitor the late Ola Simmons for signs and symptoms of pain, and to intervene and respond in a timely manner to the continuing presence of the same;

58

Case ID: 160500836

n.    the ongoing failure to obtain and provide timely and appropriate medical treatment and nursing intervention to the late Ola Simmons;

o.    the repeated failure to notify the physician of significant conditions and changes in condition;

p.    failure to prevent the development of avoidable wounds and  pressure sores including the monitoring, documentation of, prevention and treatment of those wounds;

q.    the continuing failure to follow physician's orders;

r.    neglect of Plaintiff-decedent by their failure by omission to provide adequate medical care and treatment, nutrition, hydration, medications, nursing care and treatment for her medical condition;

s.    failure to report neglect as required by law;

t.    the continuing failure to establish, implement and/or enforce appropriate corporate safety, training, staffing, and fundamental nursing care and other policies to prevent harm to residents and avoid the known consequences of inadequate care;

u.    the callous disregard for the known dangers caused by Defendant's widespread and continued practice of understaffing, thereby exposing the late Ola Simmons and other residents to life-threatening conditions.

166.    At all times relevant hereto, Defendant knew or should have known that these acts or omissions occurred throughout their facility and posed a serious threat to the safety and welfare of residents such as the late Ola Simmons. Specifically, that knowledge was acquired as

59

Case ID: 160500836

a result of complaints by the Plaintiff-decedent's representatives, the Pennsylvania Department of Health and other residents and their families. Moreover, Defendant's actions were in reckless disregard for the health and well-being of Plaintiff-decedent Ola Simmons. Defendant's policies and/or failure to follow existing policies and financial decisions caused, *inter alia,*: a) dangerous staffing levels at the facility, b) patient population needs that exceeded the capacity of the limited number of caregivers on duty; c) incompetent caregivers and, d) ongoing neglect of the late Ola Simmons.

167.     Each and all of the aforementioned acts, both omission and commission, as well as those yet to be discovered, constitute corporate negligence and was a direct and proximate cause of the incident made the basis of this suit resulting in the injuries and damages including but not limited to avoidable Stage IV pressure sores, renal failure, dehydration, malnutrition and sepsis, physical pain and mental anguish which contributed to the death of Ola Simmons, and extensive expenses for medical and hospital care and treatment.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons and in his own right, demands judgment against the Defendant in an amount in excess of $50,000.00 together with punitive damages.

## EIGHTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendants Simpson House, Inc. and Simpson House Foundation

### WRONGFUL DEATH

168.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 167 of Plaintiff's  Complaint as if

Case ID: 160500836

the same were set forth at length herein.

169.   Due to the conduct or failure to act on the part of the Defendants as aforesaid, Plaintiff-decedent has left surviving the following individual entitled to recover for her death: John Simmons, her son.

170.   John Simmons, her son, by reason of the death of Plaintiff's-decedent, has suffered financial loss and other expenses of the administration of the estate.

171.   Plaintiff statutory survivor has further suffered the loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

172.   Decedent did not bring an action for personal injuries during her lifetime, there were no other actions before death of the Decedent that have been commenced against these Defendants.  The Plaintiff therefore bring this action under and by virtue of the Pennsylvania Wrongful Death Act.

173.   Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct, omission to act causing death or increasing risk of harm.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right demands judgment against the Defendants Simpson House, Inc and Simpson House Foundation in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

## NINTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased

61

Case ID: 160500836

**and in his own right v. Defendants Simpson House, Inc. and Simpson House Foundation**

## SURVIVAL ACTION

174.    Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 173 of Plaintiff's Complaint as if the same were set forth at length herein.

175.    Plaintiff brings this action on behalf of the Estate of Ola Simmons, deceased under and by virtue of the Act, 20 P. C.S.A. §3371 et seq., a survival action, against Defendants.

176.    Plaintiff claims on behalf of said estate damages suffered by reason of the death of Decedent, as well as for pain and suffering of the Decedent prior to her death.

177.    As a result of the wanton and willful conduct and reckless indifference of Defendants, Defendants are liable to Plaintiff for compensatory and punitive damages together with interest and costs.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right, demands judgment against the Defendants Simpson House, Inc and Simpson House Foundation in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

## TENTH COUNT

**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital**

## WRONGFUL DEATH

178.    Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 177 of Plaintiff's Complaint as if the

Case ID: 160500836

same were set forth at length herein.

179.    Due to the conduct or failure to act on the part of the Defendants as aforesaid, Plaintiff-decedent has left surviving the following individual entitled to recover for her death: John Simmons, her son.

180.    John Simmons, her son, by reason of the death of Plaintiff-decedent, has suffered financial loss and other expenses of the administration of the estate.

181.    Plaintiff statutory survivor has further suffered the loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

182.    Decedent did not bring an action for personal injuries during her lifetime, there were no other actions before death of the Decedent that have been commenced against this Defendant. The Plaintiff therefore brings this action under and by virtue of the Pennsylvania Wrongful Death Act.

183.    Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct, omission to act causing death or increasing risk of harm.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right demands judgment against the Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

## ELEVENTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased

63

Case ID: 160500836

**and in his own right v. Defendant  Prime Healthcare Services-Roxborough, LLC d/b/a**
**Roxborough Memorial Hospital**

## SURVIVAL ACTION

184.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 183 of Plaintiff's Complaint as if the same were set forth at length herein.

185.     Plaintiff brings this action on behalf of the Estate of  Ola Simmons, under and by virtue of the Act of June 30, 1972, P. L. 500, No. 164,2, effective July 1, 1972, 20 C. P. S.A. 3373 against the Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital.

186.     Plaintiff claims on behalf of said estate damages suffered by reason of the death of Decedent, as well as for pain and suffering of the Decedent prior to her death.

**WHEREFORE**, the Plaintiff John Simmons as Administrator of the Estate of Ola Simmons, and in his own right demands judgement against the Defendant Prime Healthcare Services-Roxborough, LLC d/b/a Roxborough Memorial Hospital in an amount of $50,000.00 together with punitive damages, interest and costs of suit.

## TWELFTH COUNT

**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased**
**and in his own right v. Defendant Kindred Hospital-South Philadelphia.**

### WRONGFUL DEATH

187.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in

64

Case ID: 160500836

his own right incorporates by reference paragraphs 1 through 186 of Plaintiff's Complaint as if the same were set forth at length herein.

188.    Due to the conduct or failure to act on the part of the Defendant as aforesaid, Plaintiff-decedent has left surviving the following individual entitled to recover for her death: John Simmons, her son.

189.    John Simmons, her son, by reason of the death of Plaintiff-decedent, has suffered financial loss and other expenses of the administration of the estate.

190.    Plaintiff statutory survivor has further suffered the loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

191.    Decedent did not bring an action for personal injuries during her lifetime, there were no other actions before death of the Decedent that have been commenced against this Defendant. The Plaintiff therefore bring this action under and by virtue of the Pennsylvania Wrongful Death Act.

192.    Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct, omission to act causing death or increasing risk of harm.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right demands judgment against the Defendant Kindred Hospital South Philadelphia in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

## <u>THIRTEENTH COUNT</u>

65

Case ID: 160500836

**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased
and in his own right v. Defendant Kindred Hospital-South Philadelphia**

## SURVIVAL ACTION

193.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in
his own right incorporates by reference paragraphs 1 through 192 of Plaintiff's Complaint as if
the same were set forth at length herein.

194.     Plaintiff brings this action on behalf of the Estate of Ola Simmons, under and by
virtue of the Act of June 30, 1972, P. L. 500, No. 164,2, effective July 1, 1972, 20 C. P. S.A. 3373
against the Defendant Kindred Hospital-South Philadelphia.

195.     Plaintiff claims on behalf of said estate damages suffered by reason of the death of
Decedent, as well as for pain and suffering of the Decedent prior to her death.

**WHEREFORE**, the Plaintiff John Simmons as Administrator of the Estate of Ola Simmons,
demands judgement against the Defendant Kindred Hospital South Philadelphia in an amount of
$50,000.00 together with punitive damages, interest and costs of suit.

## FOURTEENTH COUNT

**John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased
and in his own right v. Defendant Kindred Healthcare, Inc.**

## WRONGFUL DEATH

196.     Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in
his own right incorporates by reference paragraphs 1 through 195 of Plaintiff's Complaint as if
the same were set forth at length herein.

197.     Due to the conduct or failure to act on the part of the Defendants as aforesaid,
Plaintiff-decedent has left surviving the following individual entitled to recover for her death:

66

John Simmons, her son.

198. John Simmons, her son, by reason of the death of Plaintiff-decedent, has suffered financial loss and other expenses of the administration of the estate.

199. Plaintiff statutory survivor has further suffered the loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

200. Decedent did not bring an action for personal injuries during her lifetime, there were no other actions before death of the Decedent that have been commenced against this Defendant. The Plaintiff therefore bring this action under and by virtue of the Pennsylvania Wrongful Death Act.

201. Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct, omission to act causing death or increasing risk of harm.

**WHEREFORE**, the Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, and in his own right demands judgment against the Defendant Kindred Healthcare, Inc. in an amount in excess of $50,000.00 together with punitive damages, interest and costs of suit.

## FIFTEENTH COUNT

### John Simmons, ADMINISTRATOR OF THE ESTATE OF Ola Simmons, deceased and in his own right v. Defendant Kindred Healthcare, Inc.

### SURVIVAL ACTION

202. Plaintiff John Simmons, Administrator of the Estate of Ola Simmons, dec. and in his own right incorporates by reference paragraphs 1 through 201 of Plaintiff's Complaint as if the same were set forth at length herein.

203. Plaintiff brings this action on behalf of the Estate of Ola Simmons, under and by

Case ID: 160500836

virtue of the Act of June 30, 1972, P. L. 500, No. 164,2, effective July 1, 1972, 20 C. P. S.A. 3373

against the Defendant Kindred Healthcare, Inc.

204.    Plaintiff claims on behalf of said estate damages suffered by reason of the death of

Decedent, as well as for pain and suffering of the Decedent prior to her death.

**WHEREFORE**, the Plaintiff John Simmons as Administrator of the Estate of Ola

Simmons, and in his own right, respectfully requests judgement in his favor and against the

defendants in an amount in excess of $50,000.00.

Dated: August 11, 2016

Rhonda Hill Wilson, Esquire
Attorney for Plaintiff, John Simmons
Administrator of the Estate of Ola Simmons,
deceased, and in his own right

68

## VERIFICATION

I, Rhonda Hill Wilson, hereby state that I am the attorney for the Plaintiff and verify that the statements made in the foregoing pleading are true to the best of my knowledge, information and belief.  The undersigned understands that the statements herein are made subject to the penalties of 18 PA.C.S. Section 4904 relating to unsworn falsifications to authorities

DATE: _8/11/16_

_Rhonda Hill Wilson_
RHONDA HILL WILSON, ESQUIRE

69

Case ID: 160500836

## CERTIFICATE OF SERVICE

I, Rhonda Hill Wilson, Esquire, attorney for plaintiff in the within action hereby certify that a true and correct copy of Plaintiff's Complaint was served on al defendants and/or counsel via USPS First Class Mail, this 11th day of August 2016 at the addresses listed below and to this court via electronic filing.

Mary Ellen Reilly, Esquire
Attorney for Prime Healthcare Services-Roxborough
Post & Schell
Four Penn Center, 13th Floor
1600 John F. Kennedy, Blvd.
Philadelphia, PA 19103-2808
Mreilly@postschell.com

Simpson House, Inc.
2101 Belmont Avenue
Philadelphia, PA 19131

Simpson House Foundation
2101 Belmont Avenue
Philadelphia, PA 19131

Kindred Hospital-South Philadelphia
1930 South Broad Street
Philadelphia, PA 19145

Kindred Healthcare, Inc.
680 South Fourth Street
Louisville, KY 40202

Date: August 11, 2016

Rhonda Hill Wilson, Esquire
Attorney for John Simmons, Administrator for the
Estate of Ola Simmons

Case ID: 160500836